J-S35017-20

2021 PA Super 9

| | | |
|---|---|---|
| IN RE: ADOPTION OF B.G.S., A/K/A S.S.S., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.S., FATHER | : | No. 829 EDA 2020 |

Appeal from the Decree Entered January 22, 2020
In the Court of Common Pleas of Montgomery County
Orphans' Court at No:  No. 2019-A0058

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

OPINION BY STABILE, J.:                                 Filed: January 21, 2021

S.S. ("Father") appeals from the decree entered on January 22, 2020, which terminated involuntarily his parental rights to his daughter, B.G.S. a/k/a S.S.S. ("Child"), born in January 2019.[1]  Father's appeal returns to this Court after we denied the petition to withdraw his counsel filed pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and remanded for counsel to file an advocate's brief. Counsel has now filed her advocate's brief, and we may proceed to review the merits of Father's appeal.  After careful review, we reverse.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, S.S. ("Mother"), consented to Child's adoption.  The orphans' court entered a separate decree confirming her consent and terminating her parental rights.  She did not appeal.

In our prior opinion, we summarized the relevant facts and procedural history of this matter as follows:

. . . . Father and Mother dated from "the beginning of 2017" until April 2018, at which point Father ended their relationship. Mother discovered that she was pregnant after her relationship with Father ended and it is undisputed that she did not inform him of her pregnancy. After Child's birth, Mother decided to place her for adoption through Transitions Adoption Agency ("the Agency"). Mother explained at that time that she suffered a sexual assault and believed her unidentified assailant to be Child's father. The Agency placed Child with her prospective adoptive parents, D.M. and T.M., in February 2019, where she has remained to the present day.

Subsequently, Father and Mother reestablished contact in March 2019. According to Father, Mother was visiting his home in approximately April 2019 when he noticed that the background image on her cellphone was a picture of Child, which prompted him to begin asking questions. Mother explained that Child was her child, but did not disclose that Child may be Father's child, and "didn't really want to talk about it." About two weeks later, in April or May 2019, Mother informed Father that he may be Child's father. She also met with the Agency's director and informed her of Father's existence and his possible paternity of Child.

Meanwhile, Mother provided Father with the name of the Agency, which he used to look up its phone number. Father maintained that he called the Agency the day after he learned that he may be Child's father, but that his call went to voicemail and he did not leave a message. In addition, he spoke with family members, including his stepfather, who provided him with the phone number for an attorney. Father spoke with the attorney, but she advised him that she did not handle his type of case and "sent [him] a number of a person." Father then attempted to call the Agency a second time on August 26, 2019, and spoke to the director.

On September 9, 2019, the Agency filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court held a hearing on November 25, 2019, and January 22, 2020. At the conclusion of the hearing, the court placed its findings of fact on the record and announced that it would

terminate Father's rights. It entered a decree memorializing its decision that same day. Father's counsel timely filed a notice of appeal on his behalf on February 21, 2020, along with a statement of intent to file an **Anders** brief in lieu of a concise statement of errors complained of on appeal. Counsel filed a petition to withdraw and **Anders** brief in this Court on May 22, 2020.

**In re Adoption of B.G.S.**, ___ A.3d ___, 2020 Pa. Super. LEXIS 854 at *1-3 (Pa. Super. 2020) (citations to the record and footnotes omitted).

On October 7, 2020, we issued our opinion denying counsel's petition to withdraw. We explained Father's appeal was not wholly frivolous pursuant to **Anders**, remanded for counsel to file an advocate's brief within thirty days, and retained jurisdiction. **Id.** at *9-18. We also permitted the Agency to file a responsive brief within thirty days of the filing of counsel's advocate's brief. **Id.** at *18. Counsel filed her advocate's brief on November 6, 2020, and the Agency filed a joint responsive brief with Child's prospective adoptive parents (collectively, "Appellees"), on December 3, 2020.

Father now raises the following claims for our review:

1. Whether the [orphans' c]ourt committed an error of law and/or abuse of discretion when it held that [the Agency] had proven by "clear and convincing evidence" that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) because [Father] did not know nor should he have known that he could be the father of the child until approximately two and a half months after the child's birth, and once he did, he made diligent efforts towards the assumption of parental responsibilities[?]

2. Whether the [orphans' c]ourt committed an error of law and/or abuse of discretion when it held that [the Agency] had proven by "clear and convincing evidence" that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a)(6) because [Father] did not know nor should he have known that he could be the father of the child when the child was born[?]

- 3 -

Father's Brief at 7.

Our standard of review in involuntary termination matters is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). Father's claims also require us to engage in statutory interpretation. The interpretation of a statute is a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *G.A.P. v. J.M.W.*, 194 A.3d 614, 616 (Pa. Super. 2018).

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. § 2511. Section 2511 of the Adoption Act provides a bifurcated analysis that courts must apply when considering a termination petition:

. . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests

of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this matter, the orphans' court terminated Father's parental rights to Child pursuant to Section 2511(a)(1), (6), and (b). We need only agree with the court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). The Adoption Act provides as follows, in relevant part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> > ***

> > (6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child.

> > ***

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

\*\*\*

23 Pa.C.S.A. § 2511(a)(1), (6), (b).

As we explained in our prior decision, the orphans' court did not draft a written opinion articulating the reasons for its termination decree, but instead issued a statement relying on the factual findings that it placed on the record at the conclusion of the hearing. There, the court credited Father's testimony and found that he "became aware that [Mother] had a child in April of 2019 . . . [and] by early May of 2019 . . . became aware that he could be the father of that child." N.T., 1/22/20, at 109. Nonetheless, the court determined that the Agency presented clear and convincing evidence in support of its petition to terminate Father's parental rights. *Id.* at 114. The court found that Father "had information from which he could have taken more action if he have had [*sic*] the resources in order to assert his rights," but that he did not assert his rights "from May of 2019 until at least August of 2019" when he called the Agency's director. *Id.* at 110-11. The court also found that Father "knew, or had reason to know, of the child's birth . . . before her birth due to the long-term physical relationship he had with [Mother.]" *Id.* at 113. The court's reasoning concluded as follows, in relevant part:

In this case, the parent's explanation for his conduct is, in essence, that he sought assistance from adults and family figures in his life, his aunt, his stepfather, and his sister, in particular, and that he did seek to reach out to an attorney who proved not to be particularly helpful to him. But beyond those contacts, he didn't affirmatively assert with the [A]gency or with anyone in a position to help him a request for visits, a request for information about how the child was doing, a request to have FaceTime, until he had a lawyer appointed by this Court, and that didn't occur until January of 2020.

I credit [Father] that he is sincere in his desire not to have his rights terminated, and he's sincere to have a relationship with his child, and there is nothing in his testimony that is not to his credit except for the clarity, which he candidly concedes, that he has not provided for this child in any material way or any emotional way throughout her life and nor had any contact with her.

\*\*\*

The standard may seem like a high bar to meet, but parenting is an important, a sacred, and a substantial commitment between people, and that standard has not been met in this case, the standard of acting as a parent to this child, particularly during those four months of May through September of 2019.

For all of the foregoing reasons, the Court finds that the [A]gency has met its burden of proof by clear and convincing evidence establishing grounds for termination of parental rights under Section 2511(a)(1) and Section 2511(a)(6) of the statute with respect to this birth father.

*Id.* at 112-14.

We begin by addressing whether the orphans' court erred or abused its discretion by terminating Father's parental rights to Child pursuant to Section 2511(a)(1). To meet the requirements of this subsection, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a

settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child." *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)). As we have explained, "a parent does not perform his or her parental duties by displaying a merely passive interest in the development of a child." *B.G.S.*, 2020 Pa. Super. LEXIS 854 at *14.

> . . . . Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

In his advocate's brief, Father argues that he wanted to be a parent to Child and made efforts to do so, but that he did not succeed because he did not understand "the process," or how to identify or utilize resources. Father's Brief at 18. He contends that he did not know he was Child's father until May 2019 and had only four months to perform parental duties before the Agency filed its termination petition in September 2019. *Id.* at 14-19. During that time, Father maintains that he sought advice from members of his family and

an attorney, and that he spoke with the Agency's director, who did nothing to help but merely asked that he consent to Child's adoption. *Id.* at 15-18.

The most critical question in this matter is when Father knew or should have known of Child's existence, and the possibility that he was Child's father. While the plain language of Section 2511(a)(1) does not require that a parent know, or have reason to know, of a child's existence before the relevant six-month period begins, our case law instructs that a court must consider the performance of a parent "'in light of what would be expected of an individual in circumstances in which the parent under examination finds himself.'" *In re Adoption of C.M.W.*, 603 A.2d 622, 625-26 (Pa. Super. 1992) (quoting *In re Adoption of B.D.S.*, 431 A.2d 203, 207 (Pa. 1981)). Our case law also provides that a parent need not "perform the impossible" in order to maintain contact with a child. *B.,N.M.*, 856 A.2d at 856-57. A court must consider the obstacles limiting a parent's ability to perform his or her parental duties, and a parent's failure to perform those duties may be excusable if he or she acted reasonably and in good faith. *Id.* at 855. Certainly, it would be contrary to these principles to hold a father responsible for failing to perform his parental duties during a time when he did not know, and had no reason to know, that he was a parent.[2]

---

[2] If a father knows or has reason to know of a child's existence, he need not have conclusive proof of his paternity before the relevant six-month period begins. *See Z.S.W.*, 946 A.2d at 731 ("We decline to accept the trial court's rational[e] that [the father] was only required to 'attempt the level of parenting consistent with his and the agency's knowledge of parentage.'").

As stated above, the Agency filed its termination petition on September 9, 2019. This means that the Agency needed to prove Father refused or failed to perform parental duties starting at least six months before that date, or on March 9, 2019. However, the orphans' court credited Father's testimony that he did not know he might be Child's father until May 2019, about four months before the Agency filed its petition. N.T., 1/22/20, at 109. Even accepting that Father should have suspected he was Child's father as soon as he knew Child existed, the court credited Father's testimony that this did not occur until April 2019, about five months before the Agency filed its petition. *Id.* In either scenario, the Agency filed its petition well before Father had six months to perform, or fail to perform, his parental duties.[3]

Another troubling aspect of this case is the finding by the orphans' court that Father "knew, or had reason to know, of the child's birth . . . before her birth due to the long-term physical relationship he had with [Mother.]" *Id.* at 113. It should go without saying that physical relationships do not always result in the birth of children, and it was unreasonable for the court to fault Father for failing to assume that Mother had a child when he had no concrete reason for doing so. Importantly, Father testified that Mother reported using

---

[3] In their responsive brief, Appellees maintain that testimony at the hearing "showed emphatically" Father knew of his possible paternity by March 2019. Appellees' Brief at 17. In making this assertion, Appellees ignore substantial testimony to the contrary and, more importantly, ignore the findings of the orphans' court, to which this Court must defer. *T.S.M.*, 71 A.3d at 267.

contraception during the relationship. *Id.* at 37, 56-57. The Agency's director appeared to corroborate this assertion during her testimony:

Q. And even during that conversation [on April 4, 2019], [Mother] told you she was on birth control.

She took her birth control in February?

A. I believe she said the last time she had it was January. She wasn't sure, but she thought maybe January of -- I guess it would have been 2019.

***

Q. So if your notes say [Mother] also mentioned that she had a Depo shot in January or February of 2018, that would be correct, that that's something [Mother] would have told you?

Whether it's true or not, you don't know, but it's true that she told you?

A. Right.

*Id.* at 87-88.

Thus, we are constrained to conclude that the orphans' court committed an abuse of its discretion. Father did not know, and had no reason to know, of Child's existence and the possibility that he was Child's father until April or May 2019, and the court should not have held his failure to parent Child prior to that time against him. Because Father did not evidence a settled purpose of relinquishing his parental claim, or refuse or fail to perform his parental duties, "for a period of at least six months immediately preceding the filing of the petition," we must reverse the portion of the January 22, 2020 decree terminating his parental rights to Child pursuant to Section 2511(a)(1). 23

Pa.C.S.A. § 2511(a)(1); *see also Z.S.W.*, 946 A.2d at 730 (explaining that Section 2511(a)(1) requires a parent's conduct to be "sustained for at least the six months prior to the filing of the termination petition").[4]

We next consider whether the orphans' court committed an error of law or abuse of its discretion by terminating Father's parental rights pursuant to Section 2511(a)(6). As quoted above, the relevant portion of this subsection permits termination where, "[i]n the case of a newborn child, the parent knows or has reason to know of the child's birth" and fails "for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child[.]" 23 Pa.C.S.A. § 2511(a)(6).

Here, Father maintains that Section 2511(a)(6) does not apply because he did not know or have reason to know of Child's birth at the time it occurred in January 2019. Father's Brief at 21. He repeats his prior contention that he did not learn of Child's birth until April 2019 and did not learn that he may be

---

[4] We must also address the statement by the orphans' court that Father "could have taken more action if he have had [*sic*] the resources in order to assert his rights." N.T., 1/22/20, at 111. Once again, a court must consider the performance of a parent in light of the circumstances in which that parent finds himself or herself. *C.M.W.*, 603 A.2d at 625-26. In addition, Section 2511(b) of the Adoption Act expressly forbids termination "solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." 23 Pa.C.S.A. § 2511(b). To the extent the court found Father's lack of resources prevented him from performing parental duties, it could not have terminated his rights on that basis alone.

Child's father until May 2019. *Id.* Father also emphasizes his testimony that Mother stated she was using contraception during their relationship. *Id.* at 22.

We begin by addressing the applicability of Section 2511(a)(6) in light of Child's age at the time the Agency filed its termination petition. This is an issue we raised in our prior decision, but Father's counsel failed inexplicably to include it in her advocate's brief. *See B.G.S.*, 2020 Pa. Super. LEXIS 854 at *17. Section 2511(a)(6) applies "[i]n the case of a newborn child," which Section 2102 of the Adoption Act defines as one "who is six months of age or younger at the time of the filing of any petition pursuant to Chapter 25 (relating to proceedings prior to petition to adopt)." 23 Pa.C.S.A. §§ 2102, 2511(a)(6). The Agency filed its petition in this matter on September 9, 2019, when Child was about eight months old, and not a "newborn child." Therefore, Section 2511(a)(6) did not apply.

In their responsive brief, Appellees argue that Child is a "newborn child" because the Agency filed its petition to confirm Mother's consent to adoption on April 17, 2019, and then filed its petition to terminate the parental rights of Mother's unknown assailant on July 8, 2019, when Child was still six months old or younger. Appellees' Brief at 22-23. Appellees emphasize the language in Section 2102 requiring that a "newborn child" be six months old or younger "at the time of the filing of **any petition** pursuant to Chapter 25[.]" 23 Pa.C.S.A. § 2102 (emphasis added). They contend that the Agency filed "any

petition" within the necessary timeframe, and that "petitions filed during the first six months of a child's life will continue to hold a child as a newborn child if later petitions are filed." Appellees' Brief at 22-23.

We do not find Appellees' argument persuasive, as it produces a plainly absurd result. *See In the Interest of L.E.A.-M.*, 156 A.3d 310, 313 (Pa. Super. 2017) (quoting *Commonwealth v. Sloan*, 907 A.2d 460, 467 (Pa. 2006)) ("It is well-settled that 'our rules of statutory construction forbid[ ] absurd results[.]'"). Under this interpretation, Child would remain a "newborn child" as to Father no matter how old she becomes, simply because the Agency filed petitions against other individuals within Child's first six months of life.

The only reasonable construction of Section 2102 is to read its definition of "newborn child" together with Section 2511(a)(6) and conclude that "any petition" refers to the petition at issue in the proceeding. In this case, Section 2511(a)(6) provided that the orphans' court could terminate Father's parental rights if Child was a "newborn child," and Father's conduct fell below a certain standard during the four months preceding the filing of "the petition," which clearly refers to the petition the Agency filed against Father on September 9, 2019. 23 Pa.C.S.A. § 2511(a)(6). Because Child was about eight months old at the time the Agency filed that petition, she was not a "newborn child," and to hold otherwise would produce the absurd result that our law forbids. *See*

- 14 -

***L.E.A.-M.***, 156 A.3d at 313. For this reason alone, it was error for the court to terminate Father's parental rights to Child pursuant to Section 2511(a)(6).[5]

Based on the foregoing, we must reverse the portion of the January 22, 2020 decree terminating Father's parental rights to Child pursuant to Section 2511(a)(6). Because we have concluded already that we must reverse the decree as to Section 2511(a)(1), this means that we must reverse the decree in its entirety. Importantly, because the Agency's termination petition fails as to Section 2511(a), we need not consider whether the orphans' court abused its discretion or committed an error of law by terminating pursuant to 2511(b). ***L.M.***, 923 A.2d at 511.

Decree reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/21/21</u>

---

[5] In light of this disposition, we need not address Father's argument that Section 2511(a)(6) does not apply because he did not know or have reason to know of Child's birth at the time it occurred.

- 15 -