J-A02024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.S.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:K.A.S. AND B.K.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 899 WDA 2020 |

Appeal from the Order Entered July 28, 2020
In the Court of Common Pleas of Somerset County Orphans' Court at
No(s):  15 Adoption 2019

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

DISSENTING MEMORANDUM BY BOWES, J.:          **FILED: JUNE 2, 2021**

I believe that the orphans' court erred in finding that K.A.S. and B.A.S. (collectively "Maternal Grandparents") did not present clear and convincing evidence to involuntarily terminate the parental rights of K.S.D. ("Mother") and J.K. ("Putative Father").  Rather than affirming the orphans' court order that denied their petition, I would vacate the order and remand for a needs-and-welfare analysis in accordance with 23 Pa.C.S. § 2511(b).[1]  Hence, I respectfully dissent.

---

[1] As the orphans' court found that Maternal Grandparents failed to establish the statutory grounds to terminate the parental rights of Mother and Putative Father pursuant to § 2511(a), it did not engage in the subsequent analysis mandated in § 2511(b).  ***See In re P.Z.***, 113 A.3d 840, 850 (Pa.Super. 2015) ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the

*(Footnote Continued Next Page)*

The majority accurately summarized the facts and procedural history. Thus, I do not revisit those matters here. However, I note that since September 2018, Maternal Grandparents have exercised sole legal and physical custody of K.S.D. and they also maintain custody of Mother's younger child through Somerset County Children and Youth Services, who suspended Mother's in-home visitation with that child due to a cockroach infestation in Mother's home. N.T., 7/23/20, at 179.

As it relates to the orphans' court's ultimate conclusions regarding the lack of sufficient evidence to establish the statutory grounds for terminating parental rights, this Court defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re C.S.**, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting **Matter of Adoption of Charles E.D.M. II**, 708 A.2d 88, 91 (Pa. 1998)).

_____

analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child."). Since the orphans' court was not required to conduct the § 2511(b) analysis in light of its predicate finding under § 2511(a), I reject the suggestion that Maternal Grandparents waived the necessity of subsection (b) by failing to challenge the omission in this appeal. **See** Majority Memorandum at 7 n.8 ("Maternal Grandparents failed to include discussion of subsections (a)(2) and (b) in their brief, such that they failed to preserve, and therefore waived, any challenge with regard to subsections (a)(2) and (b).").

In my view, the orphans' court erred in concluding that Maternal Grandparents failed to prove the elements of § 2511(a)(1) in relation to Mother and Putative Father by clear and convincing evidence. Significantly, §2511 (a)(1) requires either the intent to relinquish rights **or** the failure to perform parental duties, not both. ***See In re Adoption of R.J.S.***, 901 A.2d 502, 510 n.5 (Pa.Super. 2006) ("Under Section 2511(a)(1), parental rights may be terminated if, for a period of at least six months, a parent **either** demonstrates a settled purpose of relinquishing parental claim to a child **or** fails to perform parental duties.") (emphasis in original). Contrary to the majority's perspective, the certified record demonstrates that Maternal Grandparents presented evidence, which the court accepted as true, that Mother and Putative Father both refused or failed to perform their parental duties for the period outlined in the statute.[2] ***See*** 23 Pa.C.S. § 2511(a)(1). I reach this conclusion cognizant of our deference to the orphans' court's role as the ultimate arbiter of fact. Indeed, it is beyond cavil that "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citations

_____

[2] As to both parents, the orphans' court discounted the clear and convincing evidence of their respective **failure** to perform parental duties, ostensibly, because that evidence did not also establish their outright **refusal**. For the reasons that I explain in the body of this dissent, that analysis is a misapplication of the law.

omitted). Phrased differently, "we may reject [the orphans' court's] conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings." *Id*. at 74.

Instantly, the orphans' court's conclusion is clearly unreasonable because, having specifically found that both Mother and Putative Father failed to perform parental duties and to provide parental care for a period of at least six months preceding the petition to terminate parental rights, it nevertheless determined that the evidence was insufficient to attain the stature of clear and convincing evidence since both parents maintained some level of contact with their daughter.

As we previously explained, a parent does not perform his or her parental duties by displaying a merely passive interest in the development of a child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004).

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re Adoption of B.G.S.*, 245 A.3d 700, 706–07 (Pa.Super. 2021) (citation omitted).

- 4 -

First, as to Putative Father, the orphans' court concluded that Maternal Grandparents presented "a strong case" to support the finding that Putative Father evidenced a settled purpose of relinquishing his parental claim, including testimony that he refused to confirm paternity and assented to the termination of parental rights, but it nonetheless elected to forgo terminating parental rights because Putative Father was not entirely absent from K.S.D.'s life. N.T., 7/23/20, at 214. Thus, based entirely on the limited weekly contact that Putative Father exercised at Maternal Grandparents' home and the "very minimal financial assistance" that he sporadically provided, the orphans' court declined to terminate his parental right involuntarily. The court opined, "I think the more appropriate method would be for him to voluntarily relinquish his parental rights, if that is what he intends to do." *Id*.

As there is no light in which to view Putative Father's meager interactions with K.S.D. that would amount to the performance of his parental duties or the provision of parental care, I believe that the orphans' court erred in disregarding the clear and convincing evidence that established that statutory grounds to terminate his parental rights pursuant to § 2511(a). *See In re B.,N.M.*, *supra* at 855 (a parent does not perform parental duties by displaying passive interest in child's development). Moreover, the fact that Putative Father possess the option of voluntarily relinquishing his parental rights to K.S.D. does not negate the uncontested evidence that Maternal Grandparents presented in favor of terminating his parental rights

involuntarily, and the orphans' court erred in denying the petition based on the assumption that it does.

Next, as to the reasons for denying the petition to terminate Mother's parental rights, the orphans' court found that Maternal Grandparents erected barriers that impeded Mother's ability to perform her parental duties and to provide parental care. *See* N.T., 7/23/20, at 212. The court first characterized a dysfunctional relationship between Mother and Maternal Grandparents and then opined that Maternal Grandparents hindered Mother's efforts to contact K.S.D. *Id*. It reasoned that, while Maternal Grandparents demonstrated that Mother failed to perform her parental duties, "there clearly is evidence that she has, on many occasions, attempted to have contact with her daughter. And it appears that those requests were denied or ignored on many occasions." *Id*. Hence, the court concluded, "that [interference] causes me to not be able to find clearly and convincingly that it's appropriate to terminate [M]other's rights at this time." *Id*.

The majority endorses this basis for denying relief, stating: "The orphans' court determined that Mother testified credibly in that she made numerous contacts to request visits with Child that Maternal Grandmother denied or ignored. Mother further stated that she provided some gifts and supplies." Majority Memorandum at 14 (citations omitted). However, in adopting the orphans' court's position based on the evidence of "numerous contact requests" and "some gifts and supplies," the majority overlooks the

core tenant that Mother cannot simply succumb to obstacles, like Maternal Grandparents' alleged reclusiveness, that impede her ability to maintain the parent-child relationship. *In re Adoption of B.G.S.*, *supra* 707.

It is well-settled that a parent must utilize all available resources to preserve the parental relationship, and exercise reasonable firmness in resisting obstacles. *Id*. Furthermore, as it relates to the facts of this case, where Maternal Grandparents are motivated by Mother's history of drug abuse and neglect of K.D.S. and her younger sibling, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id*. Hence, the orphans' court erred in concluding that it was constrained to deny Maternal Grandparents' petition to terminate Mother's parental rights because K.A.S. impeded Mother's attempts to contact the child. In actuality, the purported impediment is not a basis to deny the petition *ipso facto*, and it is relevant only in gauging Mother's determination in overcoming the obstacle. *See id*. ("A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.").

Hence, the fundamental question, which neither the orphans' court nor the majority addressed, was whether Mother exercised reasonable firmness in

resisting the obstacles that limited her ability to maintain the parent/child relationship. From my perspective, she did not.

The certified record is bereft of any evidence that Mother exercised reasonable firmness to overcome the impediments that Maternal Grandparents supposedly erected. Mother introduced myriad texts where she requested visitation with her daughter and she testified to the orphans' court's satisfaction that those entreaties were either ignored or denied.[3] Significantly, however, Mother failed to disclose what, if anything, she did in response to Maternal Grandparents' rejection of her request to visit K.S.D. There is no evidence that she approached Maternal Grandparents in an attempt to alleviate their safety concerns, visited the child unannounced, or engaged a third party to advocate on her behalf. Most importantly, Mother did not pursue child custody litigation or attempt to utilize the court system to enforce any residual custody rights that she might have retained after Maternal Grandparents obtained physical custody.

Furthermore, to the extent that Mother justifies her inaction as a desire to wait until she obtained adequate housing and reliable transportation before pursing custody litigation, she neglects to explain what she did to improve those circumstances. As of the July 2020 hearing, Mother's car has remained

---

[3] Notwithstanding the array of texts that she choose to present to the court, Mother conceded that she failed to produce any texts sent to Maternal Grandparents between February 2019 and April 2020, more than twice the time required by the statute. N.T., 7/23/20, at 200-01.

inoperable since 2018, and Mother continues to reside in the same home that CYS previously refused to sanction for in-home visitation. *See* N.T., 7/23/20, at 125-26, 180-81. Thus, as framed by her own evidence and arguments, Mother failed to utilize any resources or exercise reasonable firmness to overcome Maternal Grandparents' unsympathetic treatment. She simply continued the futile practice of sending texts.

As the totality of the evidence presented at trial established that Mother's conduct between at least February 2019 and August 2019, the relevant six-month period, evidenced her settled purpose of relinquishing her parental rights pursuant to 23 Pa.C.S § 2511(a)(1), I would vacate the orphans' court's order and remanded the matter for that court to conduct the mandated needs-and-welfare analysis in accordance with § 2511(b). Accordingly, I respectfully dissent.