J-S37017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.O., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1605 EDA 2024 |

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002649-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: M.N.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.O., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1606 EDA 2024 |

Appeal from the Decree Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000128-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: M.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.O., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1607 EDA 2024 |

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002650-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S37017-24

APPEAL OF: M.O., FATHER

:
:
:
:
:
:
:
:
:
:   No. 1608 EDA 2024

Appeal from the Decree Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000129-2023

IN THE INTEREST OF: M.F., A
MINOR

APPEAL OF: M.O., FATHER

:   IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:   No. 1609 EDA 2024

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002651-2018

IN THE INTEREST OF: M.J.F., A
MINOR

APPEAL OF: M.O., FATHER

:   IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:   No. 1610 EDA 2024

Appeal from the Decree Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000130-2023

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 30, 2024**

M.O. (Father) appeals[1] from the decrees involuntarily terminating his parental rights to his three daughters, M.N.F.-O. (born in August 2014), M.M.F.-O. (born in July 2016), and M.J.F. (born in March 2018) (collectively, Children or the Children);[2] and the orders changing the Children's permanency goals from reunification to adoption.[3]  After careful consideration, we affirm the decrees and orders.

The trial court summarized the factual and procedural history underlying this appeal:

> DHS became aware of [Children] on June 11th, 2018[,] after receiving a General Protective Services ("GPS") report alleging that [Mother] was using inappropriately harsh physical discipline on [Children].  The report was investigated and found to be valid. On June 18th, 2018[,] DHS visited the home of [M]other,[4] who denied having substance abuse and mental health issues, but stated that she was overwhelmed caring for all of the [C]hildren. On October 10th, 2018, Community Umbrella Agency ("CUA") Turning Points for Children began [providing] in-home services. On October 25th, 2018, CUA held an initial Single Case Plan ("SCP") meeting and assigned [Father] two items to complete: (1)

---

[1] This Court *sua sponte* consolidated Father's appeals.

[2] The trial court also involuntarily terminated the parental rights of S.F. (Mother) to Children.  Mother's appeals from the termination and permanency goal change concerning Children and a fourth child (unrelated to Father) are before this panel and docketed at 1510, 1511, 1512, 1513, 1514, 1515, 1516, and 1517 EDA 2024.

[3] Additionally, on September 17, 2024, the Philadelphia Department of Human Services (DHS) filed with this Court an application for relief requesting an extension of time to file its brief.  Application for Relief, 9/17/24, at 2.  DHS thereafter timely filed its brief.  Accordingly, DHS's request is denied as moot.

[4] The record does not disclose whether Father resided with Mother and Children.

comply with CUA services[,] and (2) sign all release forms related to the [C]hildren. [Father] did not attend the October 25th meeting.

On December 14, 2018, police officers transported the [C]hildren to DHS. DHS obtained Orders of Protective Custody ("OPCs") for the [C]hildren and removed them from the residence at which [M]other and [C]hildren had been residing. At a shelter care hearing held on December 17th, 2018, the OPCs were lifted and the temporary commitments to DHS were ordered to stand. [Father] was granted twice[-]weekly supervised visits with the [C]hildren, but the visits could be modified to liberal unsupervised visits if the [C]hildren's foster caregivers agreed.

At an adjudicatory hearing held on January 10th, 2019, th[e trial c]ourt discharged the temporary commitment to DHS, adjudicated the [C]hildren dependent …, and fully committed them to DHS. At that same hearing, [Father] was granted liberal, unsupervised visits with the [C]hildren as arranged, and [the trial court ordered] that CUA would supervise one of his visits per month.

On January 18th, 2019, the [C]hildren began residing in kinship care with maternal grandmother[ (Grandmother)]. At subsequent permanency review hearings and revised SCP meetings, [Father] attended the hearings but was rated noncompliant with his SCP objectives. On November 14, 2019, CUA learned that [Father] completed a Parent Café[5] on February 19, 2019.

At a permanency review hearing held on August 5th, 2020, th[e trial] court discharged [C]hildren's commitments to DHS and confirmed custody of [C]hildren with [M]other. Following that hearing, [M]other and [C]hildren began living at Kirkbride Shelter

---

[5] Neither party presented evidence concerning Father's completion of this program at the termination of parental rights (TPR) hearing. The only reference to the Parent Café in the certified record is in a proposed statement of facts attached to DHS's TPR petition and petition to modify goal change to adoption. *See* TPR Petition, 4/3/23, Exhibit A ¶ gg; Petition to Modify Goal Change, 4/3/23, Exhibit A ¶ gg. DHS's proposed statement of facts does not elaborate on the nature of this program.

Center.   On October 26, 2020, [M]other and [C]hildren began residing at Acts Christian Transitional Services ("ACTS") shelter.

On December 28, 2020, DHS learned from ACTS shelter staff members that ACTS staff members called the Philadelphia Police Department [] to transport [C]hildren to the home of [Father], [] that [Father] subsequently retrieved [C]hildren himself, and that [M]other was unable to function appropriately or properly care for [C]hildren due to her level of extreme intoxication at the time.   On that same day, DHS requested that [Father] bring [C]hildren to the home of [Grandmother] and her husband.   [Father] complied and DHS found the house to be appropriate.   DHS also learned … that [Father] rented a single room in a house and lacked appropriate space for the [C]hildren. [Father] failed to attend subsequent permanency reviews and revised SCP meetings.   As of December 17, 2021, [Father] had not visited [C]hildren at DHS.

O[n] August 12, 2021, CUA held a revised SCP meeting and assigned [Father] new SCPs: (1) participate in a parenting education class; (2) seek employment/training; (3) participate in [a] housing assistance program; (4) attend [] unsupervised visits with the [C]hildren; and (5) sign release of information forms. Father did not attend the [meeting].   Father's attendance at subsequent revised permanency review hearings was sporadic and infrequent.

Trial Court Opinion, 8/2/24, at 2-4 (unpaginated) (footnotes in original omitted; two footnotes added).

The trial court held additional permanency review hearings in March, June, and September of 2022; and in January and December of 2023.  The trial court consistently found Father to be noncompliant or minimally compliant with his SCPs.  Father did not have housing or proof of employment as late as January 27, 2023.  **See** Order, 1/27/23.

On April 4, 2023, DHS filed a petition to involuntarily terminate the parental rights of Father to Children, pursuant to Section 2511(a)(1), (2), (5),

- 5 -

(8), and (b). After numerous continuances, the trial court held a hearing on DHS's petition on May 15, 2024. Father did not attend, but was represented by counsel. Attorney Jeffrey Bruch, Esquire (Attorney Bruch), served as legal counsel and guardian *ad litem* for Children.

DHS presented the testimony of Ty'shee Brown, CUA case manager (Ms. Brown). Ms. Brown testified that Children were currently placed with Grandmother, and had been in DHS custody for more than five years. **See** N.T., 5/15/24, at 12. Ms. Brown testified that Father's SCPs were to obtain housing and employment, attend parenting classes, and exercise liberal visitation with Children. **See id.** at 18. Ms. Brown confirmed that she advised Father that his failure to comply with court-ordered goals could result in Children's permanency goal changing from reunification to adoption. **See id.** at 14. Ms. Brown agreed that Father was not "involved with consistently meeting [C]hildren's medical and educational and developmental needs[.]" **Id.** at 20. Ms. Brown further testified that Father had not provided verification that he completed any of his SCPs, and that Father had only ever indicated his desire to be "[a] visit resource[,]" and not a full-time caretaker of Children. **Id.** at 19; **see also id.** (Ms. Brown stating Father's visits with Children were inconsistent). Finally, Ms. Brown opined that Children suffered no harm from Father's failure to visit with Children. **See id.** at 20. Following Ms. Brown's testimony, DHS entered, without objection, numerous dependency orders and clinical evaluation unit reports into evidence. **See id.** at 25-26.

Attorney Bruch next stated Children's positions on the record. *See id.* at 31. Although M.N.F.-O. expressed an interest in reunification with Mother, none of the Children opposed termination of Father's parental rights. *See id.* at 31-32; *see also id.* at 35 (Attorney Bruch stating M.N.F.-O. wanted "to go back to [M]other when [M]other gets herself together[,]" and M.M.F.-O. and M.J.F. wished to be adopted by Grandmother).

At the conclusion of the hearing, the trial court entered decrees terminating Father's parental rights to Children, and orders changing the Children's permanency goals from reunification to adoption. Father timely appealed each decree and order, and filed contemporaneous Pa.R.A.P. 1925(a)(2)(i) statements. The trial court filed identical opinions at each docket.

Father raises the following issues:

1. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §[ ]2511(a)(1)?

2. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §[ ]2511(a)(2)?

3. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §[ ]2511(a)(5)?

4. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §[ ]2511(a)(8)?

5. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §[ ]2511(b)?

6. Whether the trial court erred by determining it to be in [Children's] best interest to change the [permanency] goal from reunification to adoption?

Father's Brief at 5-6 (some capitalization modified).

In his first issue, concerning Section 2511(a)(1), Father argues that

[t]he evidence is not clear, direct and weighty that [Father] had a settled purpose [of] relinquishing a claim to the [Children]. Also, [Father] performed parental duties. Father completed a [P]arent[] [C]afé and visited the [C]hildren monthly. In addition, [F]ather maintained telephone contact with the [C]hildren.

Father's Brief at 20 (record citation omitted).

DHS counters that Father's

parental rights were terminated because he failed or refused to perform his duties, regardless of whether he intended to relinquish or maintain them. The evidence conclusively established that [Father] failed to perform the fundamental duty of a parent of a child in foster care, which is to cooperate with [DHS], work toward timely reunification, and remediate the conditions that led to the child's continued placement in a timely manner. *See In re Julissa O.*, 746 A.2d 1137, 1141 (Pa. Super. 2000) (holding that a parent has an affirmative duty to work toward the child's return and that this duty exists when the child is placed in foster care).

DHS Brief at 15.

We review the termination of parental rights for an abuse of discretion.

*See In the Int. of K.T.*, 296 A.3d 1085, 1104 (Pa. 2023). This standard of

review requires appellate courts to

accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Pennsylvania Supreme Court] discussed in [*In re:*] ***R.J.T.***, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review…. [U]nlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

***In re Adoption of S.P.***, 74 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***Matter of Adoption of L.C.J.W.***, 311 A.3d 41, 48 (Pa. Super. 2024) (citation omitted). "The standard of 'clear and convincing' evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of

the precise facts in issue." *In re Adoption of C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citation omitted). Finally, this Court need only agree with the trial court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Int. of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

Instantly, we examine Father's challenge pursuant to Section 2511(a)(1), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

To satisfy Section 2511(a)(1), the petitioner "must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Adoption of B.G.S.*, 245 A.3d 700, 706-07 (Pa. Super. 2021) (citation omitted); *see also In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) ("Section 2511[(a)(1)] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child

*and* refusal or failure to perform parental duties." (citation omitted; emphasis in original)).

> We have explained that in applying Section 2511(a)(1),
>
> > [t]he court should consider the entire background of the case and not simply … mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of h[er] parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re Adoption of A.C.*, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citations and paragraph break omitted). However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates the timeframe is the "most critical period for evaluation" of a parent's conduct. *In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021).

> Regarding the definition of "parental duties," our Supreme Court has explained:
>
> > Our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in a child's life. Fortitude is required, as **a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities**.

*Id.* (citations, some quotation marks, and brackets omitted; emphasis added).

In its opinion, the trial court opined that

under these specific facts and circumstances, this [c]ourt found clear and convincing evidence that [Father] demonstrated a settled purpose of relinquishing [his] parental claim to the [C]hildren[,] and failed to perform [his] parental duties for at least six months immediately preceding the filing of the [TPR] petition on May 15th, 2024.  Prior to filing the [TPR] petition, the [C]hildren [had] been in foster care or DHS['s] care since 2020.  Testimony from [Ms. Brown established] that [F]ather was never interested in being a reunification resource.  Further testimony demonstrated that [Father] has never been involved with the [C]hildren's medical and educational needs.  Additionally, [Father] failed to complete his SCP objectives despite numerous court orders and reminders from CUA.

Trial Court Opinion, 8/2/24, at 7 (unpaginated) (footnotes omitted).

The trial court's findings are supported by the record, and its conclusion is free of legal error.  Our review confirms that, despite having several years to do so, Father failed to complete his court-ordered goals.  **See** N.T., 5/15/24, at 18-20.  At the time of the TPR hearing, Father had not obtained housing appropriate for Children, had not successfully completed parenting classes, and had not consistently visited Children.  **See id.** at 19.  Thus, we discern no error in the trial court's determination that DHS proved, by clear and convincing evidence, that termination of Father's parental rights was warranted under Section 2511(a)(1).  **See S.P.**, 47 A.3d at 827.  Father's

challenge to termination of his parental rights to Children, under Section 2511(a), is without merit.[6]

Father next challenges termination under 23 Pa.C.S.A. § 2511(b). *See* Father's Brief at 23. Father argues

> [t]he evidence presented by [DHS] did not rise to the level of clear and convincing evidence …. Although [Father] does not have housing at this time, he has maintained a bond with the [C]hildren. It would be in the [C]hildren's best interest to not terminate [Father's] parental rights.

Father's Brief at 24.

DHS counters that "Father repeatedly expressed his lack of interest in serving as a reunification resource and had never taken care of the [C]hildren full-time." DHS Brief at 23 (record citation omitted). DHS maintains

> [t]he evidence further demonstrated that the [C]hildren were in a loving and stable, pre-adoptive home where all their needs were met. Ms. Brown testified that the [C]hildren were well[ ]bonded with their [G]randmother and that they all viewed [Grandmother] as their primary parental figure. [G]randmother provided them with love, safety, stability, and support[,] and had met all their needs for the last four or five years, in Father's and Mother's absence. … Accordingly, based on this record, the trial court correctly concluded that the developmental, physical, and emotional needs and welfare of the [C]hildren would best be served by the termination of Father's parental rights.

*Id.* (citations omitted).

---

[6] Because we agree with the trial court that DHS met its burden with respect to Section 2511(a)(1), we need not address Father's issues two through four. *See Int. of M.E.*, 283 A.3d at 830.

When the trial court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. ….

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." **K.T.**, 296 A.3d at 1105. Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." **Id.** (citation omitted). However, "the parental bond is but one part of the overall subsection (b) analysis." **Id.** at 1113.

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

**Id.** (footnote and citations omitted); **see also In re T.S.M.**, 71 A.3d 251, 269 (Pa. 2013) (stating that "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly.").

- 14 -

Here, the trial court found significant Ms. Brown's testimony that Father never desired to be a reunification resource for Children. ***See*** Trial Court Opinion, 8/2/24, at 7 (unpaginated). The trial court further observed that

> [C]hildren have been in foster care since 2020 due to [M]other's drug abuse and [Father's] unwillingness to complete his SCPs. Following the [C]hildren's adjudication as dependent, [Father] was ordered and reminded several times to complete his SCP[s.] Despite those reminders, [Father] did not engage with CUA and was shown to consistently fail to attend [ARC] classes ordered by this court.

***Id.*** at 9-10 (unpaginated) (footnotes omitted).

The record confirms that termination of Father's parental rights was in Children's best interests. Ms. Brown testified that Children's primary bond is with Grandmother, who has cared for Children for the past several years. ***See*** N.T., 5/15/24, at 21. Ms. Brown further confirmed that there had been no "signs of irreparable harm [to Children] when [F]ather doesn't attend [] visits." ***Id.*** at 20. In their current placement, Ms. Brown agreed that Children are provided "love, safety, stability and support[.]" ***Id.*** at 21. Finally, Children did not object to termination of Father's parental rights. ***See id.*** at 31-32, 35.

Upon review, we conclude the trial court acted within its discretion when it credited Ms. Brown's uncontroverted testimony. ***See S.P.***, 74 A.3d 817, 826-27; ***see also L.C.J.W.***, 311 A.3d at 48 ("It is the province of the [trial] court to assess credibility and resolve any conflicts in the evidence, and in

doing so it is free to believe all, part, or none of the evidence presented."

(citation and quotation marks omitted)).  Accordingly, Father is due no relief.[7]

Decrees and orders affirmed.  Application for relief denied as moot.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date:  10/30/2024

---

[7] Because we conclude that the trial court did not err in terminating Father's parental rights, Father's challenges to the trial court's permanency goal changes are moot. ***See Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020) (father's challenge to a child's goal change was moot after this Court affirmed the trial court's termination decrees).