J-S07017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF: J.D.A.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: O.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1324 WDA 2021 |

Appeal from the Order Entered September 20, 2021
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s):  No. 58 of 2021

BEFORE:   OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: MAY 02, 2022**

O.P. ("Father") appeals from the order granting the petition of the Westmoreland County Children's Bureau ("WCCB") to involuntarily terminate his parental rights to J.D.A.P. ("Child").  We affirm.

The relevant factual and procedural history of this appeal follows.  Prior to Child's birth, Father pled *nolo contendere* in 2010 to aggravated indecent assault, indecent assault, and corruption of minors in CP-02-CR-0012815-2009.[1]  The court which accepted Father's plea sentenced him to five to ten years in prison and a consecutive five years of probation and ordered him to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father's convictions involved his sexual assault of the twelve-year old victim in 2009, which included him digitally penetrating the victim's vagina.

register for life as a sexually violent predator.  **See** 42 Pa.C.S.A. §§ 9799.52, 9799.55(b)(4) ("Subchapter I").

Father subsequently met D.P. ("Mother") at a rehabilitation center in 2019, and they had a brief relationship.[2]  Mother contacted Father and told him she was pregnant with Child and that he might be the father.  Shortly after Child's birth in December 2019, Mother contacted Father through social media, and Father saw Child five or six times through video calls.

Aside from the video calls in December 2019, Father had no other contact with Child.  According to Father, he sent Mother money and told her she and Child could live with his sister in Allegheny County.  He said that Mother rejected Father's offer to move because she was in a new relationship and refused to let Father know where she and Child lived until he left his fiancée.  Father stated that he did not try to locate Mother because it was like looking for "a needle in a haystack."  N.T., 8/12/21, at 42.

Approximately one month after Child's birth, WCCB removed Child from Mother's care because of abuse and placed Child in a foster home.  The juvenile court adjudicated Child dependent and determined that Child's father was unknown.  After excluding another possible father, WCCB requested that

---

[2] Mother consented to the termination of her parental rights.  She did not appeal and has not participated in this appeal.

- 2 -

Father take a paternity test and scheduled three appointments, none of which occurred due to the COVID-19 pandemic.

In July 2020, Father violated his probation in the criminal case and was taken into custody. The criminal court resentenced him to one to two years of incarceration and three years of probation. Father took a paternity test while in prison, and the juvenile court confirmed his paternity in March 2021. Afterwards, Father contacted WCCB to request that Child live with his mother ("Paternal Grandmother"). WCCB did not contact Paternal Grandmother, assess Father for services, or arrange visitations or phone calls between Father and Child. There is no indication that the juvenile court ordered services for Father.

On May 13, 2021, two months after the confirmation of Father's paternity, WCCB filed the petition to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(11) and (b). The trial court held a hearing at which WCCB presented the docket from Father's criminal case[3] and the testimony of the WCCB caseworker, Jeff Knox.[4] Father appeared by video from prison and testified on his own behalf. The trial court entered the order

---

[3] The trial court admitted the docket from Father's criminal case, as well as copies of the Pennsylvania State Police's public website listing Father as a registered sexual offender.

[4] Child's dependency guardian *ad litem* ("GAL") represented Child at the termination hearing. The GAL stated that that Child's legal and best interests did not conflict, and the trial court noted that Child, who was less than two years old at the time of the hearing, was not verbal.

involuntarily terminating Father's parental rights on September 20, 2021.

Father timely appealed and both he and the trial court complied with Pa.R.A.P.

1925.

Father raises the following issues for review:

1. Whether the trial court erred in finding by clear and convincing evidence that the parental rights of [Father] should be automatically terminated under 23 Pa.C.S.A. § 2511(a)(11) without consideration of mitigating factors?

2. Whether the trial court erred in finding the developmental, physical, and emotional needs and welfare of the minor child are such that the parental rights of [Father] should be terminated under section 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 4.

Father's issues present a challenge to the trial court's decision to terminate his parental rights. The standard of review involving the involuntary termination of parental rights is limited to determining whether the trial court's decision is supported by competent evidence. *See In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record. *Id.* Where the court's factual findings are supported by the evidence, an appellate court may not disturb the ruling unless it has discerned an error of law or abuse of discretion. *Id.* Where a claim involves a question of statutory interpretation,

however, our review is *de novo* and our scope of review is plenary.[5] ***See In re Adoption of B.G.S.***, 245 A.3d 700, 704 (Pa. Super. 2021), *appeal denied*, 253 A.3d 213 (Pa. 2021).

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. ***See*** 23 Pa.C.S.A. §§ 2101-2938. Section 2511 requires the trial court to engage in a bifurcated analysis that focuses first on a parent's conduct under subsection (a), and then on a child's needs and welfare under subsection (b). ***See In re S.C.***, 247 A.3d 1097, 1103 (Pa. Super. 2021). Subsection (a) enumerates eleven types of parental conduct which would constitute grounds for involuntary termination. ***See*** 23 Pa.C.S.A. § 2511(a). Only if the court finds clear and convincing evidence that a parent's conduct satisfies a ground for termination under subsection (a) will the court then consider the needs and welfare of a child pursuant to subsection (b). ***See S.C.***, 247 A.3d at 1103; ***see also*** 23 Pa.C.S.A. § 2511(b).

---

[5] The object of statutory interpretation is to ascertain and effectuate the intent of the legislature. ***See B.K.M. v. J.A.M.***, 50 A.3d 168, 174 (Pa. Super. 2012). In interpreting statutory language, we look to the plain language of the statute and determine whether any ambiguity exists. ***Id.*** Only when the statute is ambiguous may we look to the general purposes of the statute, legislative history, and other sources to determine the legislative intent. ***Id.*** It is inappropriate for a court, by judicial fiat, to add elements to a statute. ***In re D.C.D.***, 105 A.3d 662, 673 (Pa. 2014).

In the instant matter, the trial court involuntarily terminated Father's parental rights to Child pursuant to sections 2511(a)(11) and (b), which provide:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

\* \* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . ..

23 Pa.C.S.A. § 2511(a)(11), (b) (footnote omitted).

Father first claims that the trial court erred in involuntarily terminating his parental rights based on section 2511(a)(11). Pursuant to section 2511(a)(11), the trial court **may** terminate parental rights upon clear and convincing evidence that a parent is required to register as a sexual offender. Because the term "may" is permissive, the statute affords the trial court with discretion to terminate, or decline to terminate, a parent's rights under Section 2511(a)(11) based on a parent's sexual offender registration requirement. **See Lorino v. Workers' Comp. Appeal Bd.**, 266 A.3d 487, 493 (Pa. 2021)

(noting that the term "may" connotates an act that is permissive, but not required).

Nevertheless, the language of subsection (a)(11) is straightforward: it directs the trial court to examine whether the petitioner proved "[t]he parent is required to register as a sexual offender" under Subchapter H or I of SORNA or under a registry in another jurisdiction or country. 23 Pa.C.S.A. § 2511(a)(11). Evidence that a parent is required to register as a sexual offender is alone sufficient to establish grounds for involuntary termination under subsection 2511(a)(11). The statute does not mandate further inquiry into the reasons or explanations for the parent's conduct in relation to a child.[6] The only additional finding the court must make is whether the termination of parental rights best serves the needs and welfare of a child. *See S.C.*, 247 A.3d at 1103; 23 Pa.C.S.A. § 2511(b).

Father acknowledges that he is a registered sexual offender, but he contends the trial court erred in failing to consider his "mitigating evidence" because section 2511(a)(11) is permissive and not mandatory. Father's Brief at 11-12. Father argues that the involuntary termination of his parental rights

---

[6] Unlike section 2511(a)(11), other subsections of the statute expressly require consideration of additional factors when assessing the parent's conduct. *Compare* 23 Pa.C.S.A. § 2511(a)(11) *with* 23 Pa.C.S.A. § 2511(a)(1) (permitting the termination of parental rights based on a failure to "perform parental duties"); *In re Adoption of L.A.K.*, 265 A.3d 580, 593 (Pa. 2021) (noting that subsection (a)(1) requires a court to examine individual circumstances and any explanation offered for the parent's failure to perform parental duties).

was improper because of his own efforts to support and keep Child, as well as the short amount of time between the confirmation of his paternity and the filing of the petition to terminate his parental rights. *Id.* at 12-14.

The trial court here concluded that the WCCB's evidence, which included public records of Father's criminal case and registration status as a sexual offender, established that Father was required to register as a sexual offender under Subchapter I. The court thus found the involuntary termination of Father's parental rights appropriate under section 2511(a)(11).

Our review of the record discloses no error of law or abuse of discretion by the trial court. WCCB presented clear and convincing evidence that Father's criminal case required him to register as a sexual offender for life pursuant to Subchapter I of SORNA. This alone was sufficient to establish grounds for termination under section 2511(a)(11). Further, as noted above, section 2511(a) does not require consideration of "mitigating factors." Thus, we discern no merit to Father's claim that the court erred or abused its discretion when involuntarily terminating his parental rights pursuant to section 2511(a)(11).

Father next claims that the trial court erred in its analysis under section 2511(b). When considering section 2511(b), the trial court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *See Interest of L.W.*, 267 A.3d 517, 523 (Pa. Super. 2021). "While a

parent's emotional bond with his or her child is a major aspect of the [subsection (b)] best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re M.M.*, 106 A.3d 114, 118 (Pa. Super. 2014). The court may also properly consider "whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights." *L.W.*, 267 A.3d at 524. Additionally, the court "should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*. An agency's reasonable efforts to promote reunification may be relevant to a court's consideration of a child's best interests, but the statue does not require consideration of an agency's efforts. *See In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014).

Father argues that the trial court erred because Mother and WCCB denied him the opportunity to bond with Child. Father's Brief at 16-17. Father also asserts that he will be ready and willing to care for Child upon his release from incarceration. *Id.* at 16.

The trial court found that the involuntary termination of Father's parental rights was appropriate under section 2511(b), because Child had no knowledge of Father and Father's limited interactions with Child when Child was a newborn did not form a parent-child bond. The court observed that "[t]he only home Child has ever known is that of his foster family," and that

those foster parents had demonstrated an ability to meet all of Child's physical and emotional needs. Trial Court Opinion, 9/20/21, at 6. The court concluded that Child's best interests would be served by allowing him to remain in the loving environment of his foster parents. *Id.*

The record confirms that Father had only had five or six interactions with Child by video shortly after Child's birth. *See* N.T., 8/12/21, at 41. He has not parented nor even met Child in person, and he remained unavailable because of his imprisonment to parent the Child at the time of the termination hearing.[7] Further, Knox, the WCCB caseworker, testified that Child has been with foster parents for fifteen months, the foster parent were meeting Child's physical and developmental needs, the Child looks to the foster parents for necessities and to the foster father to hold him during meetings, and the foster parents were a pre-adoptive resource. *See id.* at 14-17.

_____

[7] Father testified that he will have an apartment and a job when he is released from prison. He adds that he has "several" other children. Father's Brief at 15. However, five of Father's seven other children are in foster care and the other two are in Puerto Rico in their mother's care. *See* N.T., 8/12/21, at 44.

To the extent Father further asserts WCCB's failure to assess Paternal Grandmother as a placement resource for Child, *see* Father's Brief at 16-17, it is well settled that a termination of parental rights proceeding is not the appropriate forum in which to inquire into a better placement or adoptive alternative for a Child. *See In re Adoption of G.R.L.*, 26 A.3d 1124, 1130 (Pa. Super. 2011) (reiterating that a termination hearing is not "the proper stage to inquire into the best adoptive alternative" for a child). Thus, Father's focus on Paternal Grandmother as a possible resource is misplaced.

Based on this record, we conclude that competent evidence supported the trial court's findings, and we discern no error of law or abuse of discretion in the trial court's ruling that the involuntary termination of Father's parental rights best served the needs and welfare of Child pursuant to section 2511(b). The trial court was not required to consider Father's allegations that WCCB did not offer him reasonable services. *See D.C.D.*, 105 A.3d at 672. Further, despite Father's assertion that he is willing and able to parent Child, Father and Child have no meaningful bond. Child is doing well in foster care, and foster parents have met Child's physical, development, and emotional needs. Thus, Father's challenge to the trial court's ruling pursuant to subsection (b) fails.

In sum, we conclude that Father has demonstrated no abuse of discretion or error of law in the trial court's decision to grant WCCB's petition to involuntary terminate his parental rights pursuant to section 2511(a)(11) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/02/2022

- 11 -