J-A11037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: P.G.D.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.A.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1741 MDA 2023 |

Appeal from the Decree Entered November 21, 2023
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0055a

BEFORE:  BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 27, 2024**

S.A.B. a/k/a S.B. (Mother) appeals from the decree involuntarily terminating her parental rights to her minor daughter, P.G.D.W. a/k/a P.W. (Child), who was born in May 2019.  After careful review, we affirm.

A prior panel of this Court summarized the factual and procedural history underlying this appeal:

> The family has been involved with [York County Office of Children, Youth & Families ("CYF" or "the Agency")] since 2017…. N.T., 7/11/22, at 65, 89.  CYF obtained emergency protective custody of Child on January 29, 2021, following Mother's arrest and incarceration on driving under the influence and other charges, and placed Child with foster mother, a pre-adoptive resource, where [Child] has since remained.  ***Id.*** at 90, 94, 114-15; Order of Adjudication and Disposition, 2/11/21, at 1-2.[FN1] Mother was incarcerated until February 26, 2021.  N.T., 7/11/22, at 68, 70-71, 90, 117.  She was then re-incarcerated from March 25, 2021, to July 14, 2021.[FN2]  ***Id.*** at 68, 70-71, 91, 119.

[FN1] We observe that counsel for CYF requested that the court incorporate the dependency record, which the court granted without objection. N.T., 6/2/22, at 9. As such, Child's dependency record was included as part of the certified record.

[FN2] Mother was released to a human trafficking shelter and then moved to a halfway house. Following that, she resided in a hotel, where she remained until just prior to the July 11, 2022[,] hearing. N.T., 7/11/22, at 67-71, 120, 123-25.

---

The court adjudicated Child dependent on February 11, 2021, and established a placement goal of return to parent or guardian. Order of Adjudication and Disposition, 2/11/21, at 2-3. Thereafter, CYF instituted objectives aimed at reunification, which were communicated to Mother. CYF Exhibit 6; N.T., 7/11/22, at 66. As testified by CYF caseworker, Elyse Nangle, Mother was required to address mental health, substance abuse, and housing, which remained consistent [concerns] throughout the case. N.T., 7/11/22, at 66-67; *see also* CYF Exhibits 6-8.

Throughout the ensuing dependency proceedings, the court found Mother to be in minimal or no compliance with the permanency plan, and [that she exhibited] minimal or no progression toward alleviating the circumstances necessitating placement. As a result, on January 11, 2022, the court changed Child's permanency goal to adoption.

Thereafter, on March 8, 2022, CYF filed a petition for the termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Mother filed a motion to dismiss the termination petition on April 25, 2022, alleging that the petition failed to strictly comply with 23 Pa.C.S.A. § 2512(b) [(governing contents of petitions for involuntary termination)]. As such, she asserted that the [orphans'] court lacked jurisdiction to hear the petition. Motion to Dismiss Petition for Involuntary Termination of Parental Rights, 4/25/22, at [¶¶] 7-9. The court denied Mother's motion the following day, on April 26, 2022.

The [orphans'] court held hearings on June 2, 2022, and July 11, 2022.[FN3] Mother was present and represented by legal counsel[. Child was represented by legal counsel,] as well as a guardian *ad litem* ("GAL").[FN4]

[FN3] Aside from a continued termination hearing as to Child, the July 11, 2022, hearing also served as a permanency review hearing with respect to Child and her [minor] half-sibling, I.B., who is not a subject of the instant appeal.  N.T., 7/11/22, at 3.

[FN4] Both legal counsel and the GAL argued in favor of termination of Mother's parental rights.  N.T., 7/11/22, at 148-50. ….

On June 2, 2022, CYF presented the testimony of Abbie Fulton, (a family advocate[ for] Catholic Charities); Robert Gordon (M.Ed., [a] licensed psychologist, who conducted an evaluation of Mother, dated November 30, 2021, and was accepted [by the orphans' court] as an expert in parenting capacity examinations without objection); and Christianne Brennan (family therapist, Catholic Charities).  On July 11, 2022, CYF presented the testimony of [] Nangle []; Jill Egbert ([Drug and Alcohol] Program Supervisor, Family United Network); Carla Arp (therapist, Pressley Ridge); and Katlyn Gumpper (parent advocate, PA Child TIFFSS (Trauma Intensive Family Focused Support Services) Program).  Mother presented the testimony of J.G., Child's foster mother.  [Mother] additionally testified on her own behalf.

By decree … entered July 11, 2022, the [orphans'] court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

*See In re P.G.D.W.*, 296 A.3d 638 (Pa. Super. 2023) (unpublished memorandum at 2-4) (footnotes in original (renumbered); paragraph break and some punctuation modified).

Mother timely appealed the order terminating her parental rights.  On appeal, a panel of this Court determined the orphans' court lacked jurisdiction to consider CYF's termination petition, "[a]s the subject petition failed to

strictly comply with [23 Pa.C.S.A. § 2512(b)(1)[1]] to allege even minimal facts to support the petition[.]" *Id.* at 11 (footnote added). Accordingly, the panel vacated the termination decree and remanded the matter for the orphans' court to enter an order dismissing CYF's petition. *Id.* at 12.

On March 27, 2023, the orphans' court dismissed CYF's petition consistent with this Court's memorandum decision. On August 18, 2023, CYF filed a second petition for involuntary termination of Mother's parental rights, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). CYF contemporaneously filed a "motion for judicial notice," wherein CYF requested the orphans' court "take judicial notice of the specific prior findings of the [orphans' court] under the dependency docket[.]" Motion for Judicial Notice, 8/18/23, at 16. By order dated August 24, 2023, the orphans' court scheduled a hearing on the termination petition, and directed the parties to confer regarding any "joint stipulation of facts for submission at the start of trial."[2] Order, 8/24/23, at 1 (unpaginated).

The orphans' court held a termination hearing on November 21, 2023.[3] Mother was present and represented by counsel. Child was represented by a GAL and, separately, by legal counsel.

---

[1] Section 2512 provides the contents of a termination petition "shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights." 23 Pa.C.S.A. § 2512(b)(1).

[2] The orphans' court took no further action on CYF's motion for judicial notice.

[3] The proceeding also served as a permanency review hearing. N.T., 11/21/23, at 3.

At the termination hearing, CYF initially moved to incorporate "the actions and proceedings as docketed with the clerk of courts in the dependency action" into the orphans' court file. N.T., 11/21/23, at 3. Mother objected, arguing the incorporation of the dependency record violated the rule against hearsay. *Id.* at 4. The orphans' court overruled the objection, stating "dependency is a cumulative matter and we rely in each hearing [on] everything that has been determined in a prior hearing." *Id.* CYF then requested that the orphans' court take judicial notice of "all applications, motions, petitions and orders as docketed with the clerk of courts in the dependency action for the minor child." *Id.* at 4-5. Notably, Mother objected; the orphans' court overruled the objection and took judicial notice of the dependency filings. *Id.* at 5. The orphans' court sustained Mother's separate objection to CYF's request to incorporate the notes of testimony from the July 11, 2022, termination hearing. *Id.* at 7.

CYF called a single witness, Nangle. Nangle testified CYF's primary areas of concern regarding Mother were "[d]rug and alcohol, mental health and housing." N.T., 11/21/23, at 11. Nangle further testified to the following: Mother had been accepted into, but did not complete, two drug rehabilitation programs. *Id.* at 12. Mother failed to maintain stable housing, and recently moved to Alabama. *Id.* at 13-14. Mother had not exercised visitation with Child since June 2022. *Id.* at 15. Since February 2021, Mother never progressed from supervised visits to partially-supervised or unsupervised visits. *Id.* at 18. The Agency offered additional services relating to drug and

alcohol and mental health treatment, but Mother "had gotten into it with the provider[,]" causing the provider to close out services. *Id.* at 23. Mother has never "provided any documentation that she is able to meet her own needs, let alone the needs of she and her minor child[.]" *Id.* at 41. The Child is currently in a pre-adoptive foster home. *Id.* at 39.

At the conclusion of the hearing, the orphans' court granted CYF's termination petition, and entered its final decree involuntarily terminating Mother's parental rights to Child. Mother filed a timely appeal and concise statement of errors complained of on appeal.

On January 18, 2024, the orphans' court mailed correspondence to this Court conceding that it had committed error, and requesting that the case be remanded. Correspondence, 1/18/24, at 1 (unpaginated). This Court responded on January 22, 2024, directing the orphans' court to address any concerns in a Pa.R.A.P. 1925(a) opinion. On January 24, 2024, the orphans' court filed a one-page Rule 1925(a) opinion indicating, "upon further review, the court does not affirm its order" involuntarily terminating Mother's parental rights. Orphans' Court Opinion, 1/24/24, at 1 (unpaginated) (capitalization modified).

On May 16, 2024, following oral argument before this Court, we remanded the case for the orphans' court to clarify under which subsections of 23 Pa.C.S.A. § 2511(a) the court terminated Mother's parental rights. We directed the orphans' court to file a "clarified order and supplemental Pa.R.A.P.

- 6 -

1925 opinion within 14 days[.]" Order, 5/16/24. On May 30, 2024, the orphans' court filed a supplemental 1925 opinion.

Mother presents the following issues for our review:

1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in taking judicial notice of records of another case (over objection) and incorporating the record from the related dependency proceedings (over objection)[,] wherein evidence and documents contained within said record were admitted under a separate and distinct body of law (the Juvenile Act), contained documents admitted into evidence under a lower standard of proof, were not properly authenticated, and consisted of hearsay within hearsay with no exceptions presented?

2. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that the Agency met its burden of proving, by clear and convincing evidence, that Mother's conduct evidenced a settled purpose of relinquishing her parental claim to her child or has refused to perform parental duties pursuant to 23 Pa.C.S.A. § 2511(a)(1)?

3. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that the Agency met its burden of proving, by clear and convincing evidence, that Mother's repeated and continued incapacity, abuse, neglect, or refusal caused the child to be without essential care, control, or subsistence necessary for their physical or mental well-being, and the conditions and causes cannot or will not be remedied by Mother pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

4. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that the Agency met its burden of proving, by clear and convincing evidence, that the conditions which led to the removal and placement of the child continued to exist and Mother failed to remedy those conditions within a reasonable time pursuant to 23 Pa.C.S.A. § 2511(a)(5)?

5. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that the Agency met its burden of proving, by clear and convincing evidence, that the conditions which led to the removal or placement of the child continue to

exist, and termination of parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

6.     Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that the Agency met its burden of proving, by clear and convincing evidence, that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 5-7 (numbering modified).

We review the termination of parental rights for an abuse of discretion.

*See In the Int. of K.T.*, 296 A.3d 1085, 1104 (Pa. 2023).  This standard of review requires appellate courts to

accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion.  Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Pennsylvania Supreme Court] discussed in [*In re:*] *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review…. [U]nlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents.  *R.J.T.*, 9 A.3d at 1190.  Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

- 8 -

*In re Adoption of S.P.*, 74 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

Mother's first issue challenges the orphans' court's evidentiary ruling taking judicial notice of Child's dependency proceedings and incorporating the dependency record into the involuntary termination proceeding, over Mother's objection. Mother argues,

> [w]hile it is sometimes common for the parties in termination cases to agree to 'incorporate' the dependency record into the termination proceedings, no such agreement occurred in this case. It is the Agency's burden to prove termination is appropriate using evidence derived from the termination proceeding itself[,] not some earlier hearing in another court, using different evidentiary standards[,] having different goals, and different burdens of proof.

Mother's Brief at 21-22. Mother further argues that dependency proceedings do not qualify as "adjudicative facts" of which the orphans' court could take judicial notice. *Id.* at 24 (citing Pa.R.E. 201(b)); *see also id.* (citing *220 Partnership v. Philadelphia Elec. Co.*, 650 A.2d 1094, 1097 (Pa. Super. 1994)). As a result, Mother maintains the orphans' court "improperly considered and used evidence from the dependency case to terminate [her] parental rights." *Id.* at 20-21.[4]

We review questions concerning the admissibility of evidence under the following standard:

---

[4] CYF does not concede error, unlike the orphans' court. *See* CYF Brief at 29 (citing *In re T.B.*, 266 A.3d 609 (Pa. Super. 2021) (unpublished memorandum).

> [T]he decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the orphans' court overrides or misapplies the law.

*In re A.J.R.-H.*, 188 A.3d 1157, 1166-67 (Pa. 2018) (citations omitted).

The Pennsylvania Rules of Evidence define hearsay as a "statement that … the declarant does not make while testifying at the current trial or hearing" that the proponent "offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); Pa.R.E. 802 (general hearsay rule).

In support of her position that the orphans' court erroneously admitted this evidence, Mother relies on our Supreme Court's decision in *In re A.J.R.-H.* In *A.J.R.-H*, at the commencement of an involuntary termination hearing, Berks County Children and Youth Services (CYS) moved to admit 168 exhibits "spanning more than 1[,]230 pages, cover[ing] a wide range of subjects from an array of sources and authors." 188 A.3d at 1161. The orphans' court overruled the parents' hearsay objection to entry of all but one exhibit. *Id.* The orphans' court concluded the records were admissible under the business records exception to the rule against hearsay. *Id.*; *see also* Pa.R.E. 803(6).

In reversing the orphans' court, our Supreme Court determined CYS failed "in the first instance" to satisfy the requirements of the business records

- 10 -

exception, by not presenting any witness to support the exhibits' admission.

***A.J.R.-H.***, 188 A.3d at 1167. Additionally,

> a large number of the exhibits contained multiple levels of hearsay. Where a hearsay document contains additional hearsay within it …, each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence.

***Id.*** at 1169 (citations omitted). Finally, the Court concluded the orphans' court's error was not harmless:

> [T]he fact that there may have been sufficient evidence presented at the hearing to support termination is not, alone, a basis for finding harmless error…. [T]he standard for finding harmlessness in a termination case requires us to conclude that the evidentiary error **could not have had any impact upon the orphans' court's decision**. That there may have been properly admitted evidence sufficient to support termination does not render the orphans' court's substantial evidentiary error harmless.

***Id.*** at 1175 (footnote omitted; emphasis added).

Instantly, based on the record and foregoing legal authority, we conclude the orphans' court erred in admitting Child's dependency file into the record over Mother's objection and absent witness testimony. ***See A.J.R.-H.***, 188 A.3d at 1167 (noting CYS's failure to call an authenticating witness); ***see also In re T.B.***, 266 A.3d 609 (Pa. Super. 2021) (unpublished memorandum at 17-18)[5] ("[A] court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though

---

[5] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. ***See*** Pa.R.A.P. 126(b)(1)-(2).

the contents of those records may be known to the court." (quoting **220 Partnership**, 650 A.2d at 1097)).

However, unlike in **A.J.R.-H.**, our review confirms the orphans' court's error in admitting this evidence was harmless. In **A.J.R.-H.**, a testifying CYS caseworker was only "assigned as the agency caseworker for the family around the time CYS filed the" termination petitions. **See A.J.R.-H.**, 188 A.3d at 1163. The caseworker consistently relied on improperly admitted evidence "to provide answers to questions posed to her regarding the history of CYS's involvement with the family and the parties' compliance with the court[-]ordered services." **Id.** at 1173. As no other witness testified regarding the family's history with CYS, and the parties' compliance with court-ordered goals, the orphans' court improperly relied on incompetent evidence in support of termination. **Id.**

Here, Nangle testified that she served as the family's caseworker since 2021, **see** N.T., 11/21/23, at 9, and much of her testimony was based on her own personal knowledge and observations. **See generally id.** at 8-52. Further, and significantly, the orphans' court did not rely upon incompetent evidence in concluding the Agency met its burden of proving Mother's involuntary termination of parental rights was warranted. As the court reasoned in its supplemental Rule 1925 opinion:

> The court agrees that it was not advisable to incorporate the dependency record or take judicial notice of it over [Mother's] objection. However, the court does not believe that its decision in this case was impacted. **The Agency caseworker, Ms.**

> **Nangle**[,] **testified largely based on her personal knowledge and interaction with Mother, Child, and** [**foster m**]**other.** Mother also testified.
>
> Ms. Nangle had been the caseworker since the end of 2021. Regarding the Agency file, the court heard testimony with regard to why the business record exception was applicable, at least with regard to the Agency's file. N.T., 11/21/23, at 8-9. The court agrees that third-party material in the file may not qualify for the business records exception. However, in answering questions, Ms. Nangle indicated when she did not know an answer[,] based on the fact that another caseworker may have been on the case at the time.[6] When Ms. Nangle was asked about particular dates, such as when a third-party provider opened or closed [services] or why, she indicated that she would have to consult the file to find these answers …. For example, Ms. Nangle testified that certain providers closed unsuccessfully. However, Mother also testified that the providers closed [services] unsuccessfully and gave her opinion as to why. At any rate, **the court did not base its decision on such testimony regarding third parties presented by Ms. Nangle**.
>
> The court's concerns and the basis for its decision, [were] Child being in placement for thirty-four months, Mother's lack of participation with visits or performance of parental duties, lack of progress to unsupervised visits, and no parental bond with Child, etc. ….

Orphans' Court Opinion (Supplemental), 5/30/24, at 27-29 (citation modified; emphasis and footnote added).

Our review of the record and the orphans' court's supplemental 1925 opinion confirms the orphans' court solely based its termination of Mother's parental rights on competent evidence, ***see A.J.R.-H.***, 188 A.3d at 1171, and

---

[6] In response to the Agency's question regarding whether Mother visited with Child in December 2021, Ms. Nangle testified, "I was not in the case at that point, so I don't have that answer." N.T., 11/21/23, at 16.

therefore its evidentiary error was harmless. Accordingly, we next consider Mother's challenge to the termination of her parental rights.

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (citation omitted). "The standard of 'clear and convincing' evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citation omitted). Finally, this Court need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Int. of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

Instantly, we examine Mother's challenge pursuant to Section 2511(a)(1), which provides:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

To satisfy Section 2511(a)(1), the petitioner "must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties."  *See In re Adoption of B.G.S.*, 245 A.3d 700, 706-07 (Pa. Super. 2021) (citation omitted); *see also In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) ("Section 2511[(a)(1)] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties." (citation omitted; emphasis in original)).

We have explained that in applying Section 2511(a)(1),

[t]he court should consider the entire background of the case and not simply … mechanically apply the six-month statutory provision.  The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of h[er] parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re Adoption of A.C.***, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citations and paragraph break omitted). However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates the timeframe is the "most critical period for evaluation" of a parent's conduct. ***In re Adoption of L.A.K.***, 265 A.3d 580, 592 (Pa. 2021).

Regarding the definition of "parental duties," our Supreme Court has explained:

> Our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert [herself] to take and maintain a place of importance in a child's life. Fortitude is required, as **a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities**.

***Id.*** (citations, some quotation marks, and brackets omitted; emphasis added).

Instantly, Mother argues that rather than demonstrating "a settled purpose of relinquishing her parental rights," the record evidences Mother's "love, communication, and association" with Child. Mother's Brief at 28. Mother maintains that in the six months preceding the filing of the termination petition, she has "stay[ed] consistent with her positive and appropriate visitations with the [C]hild[,] and [secured] housing." ***Id.*** at 28-29.

The Agency disagrees:

- 16 -

Mother has not consistently performed parental duties in the six[-]month period prior to the filing of the [termination p]etition …, not even visitation. After approximately thirty[-]four months of court involvement, Mother has not consistently been able to discharge her parental duties and obligations. There is no evidence whatsoever that Mother can independently meet her own needs as well as the needs of the minor [C]hild….

Agency's Brief at 34-35.

Although the orphans' court acknowledged Mother made some progress toward her court-ordered goals, it concluded termination was appropriate under Section 2511(a)(1). The court explained:

[I]t is clear from the record that CYF offered clear and convincing evidence that Mother has refused or failed to perform parental duties for at least six months immediately preceding the filing of the petition to terminate her parental rights. … Mother had supervised visits which never progressed to unsupervised or partially unsupervised. Even after visits were scheduled to resume in April 2023, Mother missed in-person visits with Child[,] apparently due to moving out of York County and to transportation issues. Mother's participation in programs is commendable, but presented a hindrance to her ability to perform parental duties. In wanting to work on herself, Mother somehow chose or ended up in programs that were [far away from Child] and outside Pennsylvania. As of April 2023, Mother was living in Lancaster, PA. By September 2023, Mother had moved to Michigan, and by October 2023[,] Mother had moved to Alabama. **These moves prevented Mother from having in-person visits or performing parental duties such as consistently providing for Child**. Mother's failure persisted[, with] no progression to less[er] supervision, lack of housing, *etc*.

The court did hear testimony that Mother had brought items for Child to her last visit in June 2022, and had attended one or two doctor's appointments. Although Mother has made progress with [her] drug and alcohol use and with securing an apartment which occurred after the filing of the petition to terminate her parental rights, the court must consider the totality of the circumstances. Even when Mother's visitation rights were restored, Mother did not or could not do in-person visits[,] and

- 17 -

apparently would not participate in virtual visits if she could not record them or have a third party in the room to monitor[,] due to her lack of trust of the Agency. **The court recognizes that Mother has made efforts, but they have not been diligent and sustained efforts**. N.T., 11/21/23, at 36.

CYF has provided sufficient evidence under 23 Pa.C.S.A. § 2511(a)(1) that Mother has failed to perform parental duties for well beyond the previous six months prior to the filing of the petition to terminate parental rights.

Orphans' Court Opinion (Supplemental), 5/30/24, at 14-16 (record citation modified; emphasis added).

Our review confirms the orphans' court's findings are supported by the record, and free of legal error. Therefore, we discern no error in the orphans' court's determination that CYF proved, by clear and convincing evidence, that termination of Mother's parental rights was warranted under Section 2511(a)(1). **See S.P.**, 47 A.3d at 827 ("an appellate court must … defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion."). Mother's challenge to termination of her parental rights of Child is without merit.[7]

In her final issue, Mother challenges termination under 23 Pa.C.S.A. § 2511(b). When the orphans' court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

---

[7] Accordingly, we do not address Mother's issues three through five. **See M.E.**, 283 A.3d at 830.

- 18 -

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. ….

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." ***K.T.***, 296 A.3d at 1105. Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** (citation omitted). However, "the parental bond is but one part of the overall subsection (b) analysis." ***Id.*** at 1113.

The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

***Id.*** (footnote and citations omitted).

Mother faults the Agency for creating "roadblocks" towards reunification with Child by not "start[ing] cooperation with Alabama[,]" until "well after the filing of [the] termination petition." Mother's Brief at 41. She further maintains:

Mother loves [Child] and has much to offer for the [C]hild's benefit. The relationship between Mother and [Child] adds value

- 19 -

to [Child]'s life.  [Child] enjoys being with Mother and they have a very positive bond.  Termination would unnecessarily and permanently deprive [Child] of the relationship with Mother and would not best serve the [C]hild's needs and welfare.  [Child] deserves to have her relationship with her mother preserved, which can only be assured if Mother retains her parental rights.

*Id.*

Mother cites to no supporting legal authority.  *See* Pa.R.A.P. 2119(a) (providing appellant's argument shall include "discussion and citation of authorities as are deemed pertinent."); *see also V.I.-P. v. S.R.D.*, 288 A.3d 502, 523 (Pa. Super. 2023) ("[T]his Court will not act as counsel and will not develop arguments on behalf of appellant." (citation omitted)).  Moreover, her argument is belied by the record.

At the termination hearing, Nangle testified that Child does not share a parental bond with Mother.[8]  N.T., 11/21/23, at 21.  In contrast, during Nangle's monthly visits to Child's pre-adoptive foster home, she observed Child's positive connection with her foster family.  *Id.* at 19.  Child refers to her foster mother as "mother," *id.*, has resided with the foster family since

---

[8] Mother also argues, in a single sentence of her brief (for the first time), that Nangle "was improperly allowed to testify about a parental bond or lack thereof as she is not an expert."  Mother's Brief at 41.  Mother neither included this issue in her 1925 concise statement of errors, nor does she offer any argument or citation to authority.  Therefore, this claim is waived.  *See In re Adoption of C.J.P.*, 114 A.3d 1046, 1053 (Pa. Super. 2015) (holding claim that the orphans' court considered irrelevant evidence waived where it was not included in concise statement of errors); *see also* Pa.R.A.P. 2119(a).

2021, and "is absolutely adored in that home. … [Foster mother] spoils [Child] in a good way and she is the princess of that house." *Id.* at 22.

The orphans' court explained its rationale for concluding termination was in Child's best interests:

> In analyzing this case under [Section] 2511(b), it is clear from the record that CYF offered clear and convincing evidence that the developmental, physical, and emotional needs and welfare of Child is best served by terminating parental rights. … [**T**]**he court heard testimony that Child is bonded to the** [**foster**] **mother**[**,**] **whom she refers to as "mom."** [**Nangle**] **testified that Child is** [**not**] **bonded to Mother and both Child's legal counsel and** [**GAL**] **reported observing Child's bond with the** [**foster**] **mother**. N.T., 11/21/23, at 72-73.
>
> [Mother] did not see Child between June 2022 and April 2023 due to the termination and subsequent appeal period. But even after visitation was restored, Mother did not participate in visits with Child. **Maintaining the bond does not serve the Child's developmental, physical, and emotional needs. The court heard testimony that Child does not ask for contact with Mother, and Mother's contact has been sporadic**. Since January 2021, Child's needs have been and are being addressed by her [foster] mother[,] who is an adoptive resource for Child and with whom Child is bonded. [Foster m]other meets Child's intangible needs for love, comfort, safety, and stability, as well as[] her physical and developmental needs related to her [medical] diagnoses and medication. The court heard testimony that Child does not have a parental bond with Mother. *Id.* at 21. Thus, there is clear and convincing evidence on the record that the bond, if it still exists, is not necessary or beneficial to Child. Child has been in foster care for thirty-four months as of the date that termination of parental rights was granted. [C]hild's need for permanency is paramount at this time. …

Orphans' Court Opinion (Supplemental), 5/30/24, at 25-26 (record citations modified; emphasis added).

We agree with the reasoning and conclusion of the orphans' court, as it is supported by the record and free of legal error. *S.P.*, 74 A.3d 817, 826-27. As we have previously observed, a "court cannot and will not subordinate indefinitely a child's need for permanence and stability to the parent's claim to progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). Further, the orphans' court acted within its discretion when it credited Nangle's testimony regarding the Child's bond with foster mother, and absence of a bond with Mother. *See L.C.J.W.*, 311 A.3d at 48 ("It is the province of the orphans' court to assess credibility and resolve any conflicts in the evidence, and in doing so it is free to believe all, part, or none of the evidence presented." (citation and quotation marks omitted)). Accordingly, Mother is entitled no relief, and we affirm the order terminating Mother's parental rights.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/27/2024

- 22 -