J-S37016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1510 EDA 2024 |

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002649-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: M.N.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1511 EDA 2024 |

Appeal from the Decree Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000128-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: M.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1512 EDA 2024 |

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002650-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S37016-24

```
                                     :
                                     :
                                     :
APPEAL OF: S.F., MOTHER              :
                                     :
                                     :
                                     :
                                     :
                                     :    No. 1513 EDA 2024
```

Appeal from the Decree Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000129-2023

```
IN THE INTEREST OF: M.F., A          :    IN THE SUPERIOR COURT OF
MINOR                                :         PENNSYLVANIA
                                     :
                                     :
                                     :
APPEAL OF: S.F., MOTHER              :
                                     :
                                     :
                                     :
                                     :
                                     :    No. 1514 EDA 2024
```

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002651-2018

```
IN THE INTEREST OF: M.J.F., A        :    IN THE SUPERIOR COURT OF
MINOR                                :         PENNSYLVANIA
                                     :
                                     :
                                     :
APPEAL OF: S.F., MOTHER              :
                                     :
                                     :
                                     :
                                     :
                                     :    No. 1515 EDA 2024
```

Appeal from the Decree Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000130-2023

```
IN THE INTEREST OF: M.C., A          :    IN THE SUPERIOR COURT OF
MINOR                                :         PENNSYLVANIA
                                     :
                                     :
                                     :
APPEAL OF: S.F., MOTHER              :
                                     :
```

J-S37016-24

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | No. 1516 EDA 2024 |

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000673-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: M.A.C.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1517 EDA 2024 |

Appeal from the Decree Entered May 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000093-2024

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED OCTOBER 25, 2024**

S.F. (Mother) appeals[1] from the decrees involuntarily terminating her parental rights to her three daughters, M.N.F.-O. (born in August 2014), M.M.F.-O. (born in July 2016), M.J.F. (born in March 2018) (Daughters),[2] and

_____

[1] This Court *sua sponte* consolidated Mother's appeals.

[2] The trial court also involuntarily terminated the parental rights of M.O. (Father) to Daughters. Father's appeals from the termination and permanency goal change are before this panel and docketed at 1605, 1606, 1607, 1608, 1609, and 1610 EDA 2024.

- 3 -

son, M.A.C.C. (born in June 2022)[3] (collectively, Children or the Children); and the orders changing the Children's permanency goals from reunification to adoption. In addition, Mother's counsel (Counsel) has filed an **Anders**[4] brief and petition for leave to withdraw from representation. After careful consideration, we grant Counsel's petition to withdraw and affirm the decrees and orders.

The trial court summarized the factual and procedural history underlying this appeal:

> [The Philadelphia Department of Human Services (DHS)] became aware of [Daughters] on June 11th, 2018[,] after receiving a General Protective Services ("GPS") report alleging that [Mother] was using inappropriately harsh discipline on [Daughters]. The report was investigated and found to be valid. One June 18th, 2018[,] DHS visited the home of [Mother],[5] who denied having substance abuse and mental health issues, but stated that she was overwhelmed caring for all of [her Daughters]. On October 10th, 2018, Community Umbrella Agency ("CUA") Turning Points for Children began in-home services. On October 25th, 2018, CUA held an initial Single Case Plan ("SCP") meeting and assigned [Mother] several goals to complete: (1) comply with random drug screens, (2) attend [Achieving Reunification Center (ARC)] for parenting, housing, and employment classes, (3) provide proof of employment, (4) obtain adequate housing, … and ([5]) participate in a dual diagnosis treatment program.

_____

[3] The trial court also involuntarily terminated the parental rights of the unknown father of M.A.C.C. Unknown father has not appealed.

[4] **Anders v. California**, 386 U.S. 738 (1967); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for withdrawal of court-appointed counsel has been extended to appeals involving termination of parental rights).

[5] The record does not disclose whether Father resided with Mother and Daughters.

On December 14, 2018, police officers transported [Daughters] to DHS. DHS obtained Orders of Protective Custody ("OPCs") for [Daughters] and removed them from the residence at which [Mother] and [Daughters] had been residing. At a shelter care hearing held on December 17th, 2018, the OPCs were lifted and the temporary commitments to DHS were ordered to stand. [Mother] was granted weekly supervised visits with [Daughters].

At an adjudicatory hearing held on January 10th, 2019, th[e trial c]ourt discharged the temporary commitment to DHS, adjudicated [Daughters] dependent …, and fully committed them to DHS.

On January 18th, 2019, [Daughters] began residing in kinship care with maternal grandmother[ (Grandmother)]. At subsequent permanency review hearings and revised SCP meetings, [Mother] attended the hearings but was rated noncompliant with her SCP objectives.

At a permanency review hearing held on August 5th, 2020, th[e trial] court discharged [Daughters'] commitments to DHS and confirmed custody of [Daughters] with [Mother]. Following that hearing, [Mother] and [Daughters] began living at Kirkbride Shelter Center. On October 26, 2020, [Mother] and [Daughters] began residing at Acts Christian Transitional Services ("ACTS") shelter.

On December 28, 2020, DHS learned from ACTS shelter staff members that ACTS staff members called the Philadelphia Police Department [] to transport [Daughters] to the home of [F]ather, [] that [Father] subsequently retrieved [Daughters] himself, and that [Mother] was unable to function appropriately or properly care for [Daughters] due to her level of extreme intoxication at the time. On that same day, DHS requested that [Father] bring two children to the home of [Grandmother] and her husband. [Father] complied and DHS found the house to be appropriate. DHS also learned … that [Father] rented a single room in a house and thus lacked appropriate space for [Daughters].

Trial Court Opinion, 8/8/24, at 2-4 (unpaginated) (footnotes in original omitted; one footnote added).[6]

Following a shelter care hearing, the trial court ordered Mother to undergo a drug screen and assessment, and Daughters were again placed into kinship care with Grandmother. Order, 12/30/20. The trial court held permanency review hearings in April, September, and December of 2021; March, June, and September of 2022; and in January and December of 2023. Mother did not progress beyond supervised visitation during this period, and Daughters remained in Grandmother's care. Additionally, Mother tested positive for PCP and benzodiazepines in November of 2021, and benzodiazepines in July of 2022. The trial court found Mother to be largely noncompliant with her court-ordered goals. *See* Order, 3/21/22; Order, 9/12/22; Order, 12/19/23.

In the interim, M.A.C.C. was born in June 2022. Shortly after his birth, DHS filed an application for an OPC, alleging M.A.C.C. was born drug-dependent. Application for Order of Protective Custody, 7/28/22, at 2 (unpaginated). On July 29, 2022, the trial court transferred M.A.C.C.'s custody to DHS, and DHS placed M.A.C.C. with maternal cousin (Cousin). *See* Order, 7/29/22.

_____

[6] The trial court authored opinions at each docket. The August 8, 2024, opinions at 1510, 1511, 1512, 1513, 1514, and 1515 EDA 2024 are identical, and pertain to Daughters. The July 30, 2024, opinions at 1516 and 1517 EDA 2014 are identical, and pertain to M.A.C.C.

At an adjudicatory hearing held August 26th, 2022, [M.A.C.C.] was adjudicated dependent based on the present inability of [Mother] to provide proper parental care and control, and he was fully committed to DHS. The [trial] court also ordered [Mother] to go to the Clinical Evaluation Unit ("CEU") for a [] drug screen, to have three random drug screens before the next court date, and that [Mother] be referred to … ARC[] for parenting education classes and housing assistance. …

At a permanency review [hearing] held on November 14th, 2022, the court ordered that [M.A.C.C.] remain committed to DHS and that [Mother] be referred to the CEU for a [] drug screen and [submit to] three random [drug] screens prior to the next court date. …

On April 5th, 2023, [Mother] attended a visit with [Daughters]. At the visit, [Mother] was nodding in and out of consciousness, her speech was slurred and slow, and she admitted that she had not been in drug treatment since February 2023. Subsequent drug screens indicated that [Mother] was positive for illicit substances. As of November 17, 2023, CUA suspended [Mother's] visits with [M.A.C.C.] until the next court hearing due to her poor attendance and drug relapse. At the time, [Mother] had only attended three of the last eleven visits offered.

As of February 2nd, 2024, [Mother] has not made any progress on her SCPs, has not made any progress towards achieving reunifications vis[-]à[-]vis ARC classes, and [M.A.C.C.] has been in DHS custody for nearly two years. [M.A.C.C.] has remained with [Cousin] for the entirety of his placement[,] and [M.A.C.C.] is well-bonded with [Cousin].

Trial Court Opinion, 7/30/24, at 3-5 (footnotes omitted).

On April 4, 2023, DHS filed a petition to involuntarily terminate the parental rights (TPR) of Mother to Children, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). After numerous continuances, the trial court held a hearing on DHS's petition on May 15, 2024. Mother did not attend, but was represented by Counsel. Attorney Jeffrey Bruch, Esquire

(Attorney Bruch), served as legal counsel and guardian *ad litem* (GAL) for Daughters. Attorney Patricia Cochran, Esquire (Attorney Cochran), served as GAL for M.A.C.C.

DHS presented the testimony of Ty'shee Brown, CUA case manager (Ms. Brown). Ms. Brown testified that Daughters were currently placed with Grandmother, and M.A.C.C. was placed with Cousin. N.T., 5/15/24, at 12. Ms. Brown testified that DHS became involved with the family more than five years prior due to Mother's illicit substance abuse (specifically, PCP usage) and inappropriate housing. *See id.* at 12-13. Ms. Brown testified that Mother was ordered to complete drug and alcohol and mental health treatment, and attend ARC for parenting classes and assistance with housing and employment. *See id.* at 15.

Throughout DHS's involvement with Mother, she never provided documentation that she successfully completed drug and alcohol or mental health treatment. *See id.* at 15-16. In the nine months prior to the TPR hearing, Mother had not visited Children. *See id.* at 16-17. Finally, Ms. Brown confirmed that Mother had made no progress toward her court-ordered goals. *See id.* at 18. Following Ms. Brown's testimony, DHS entered, without objection, numerous dependency orders and CEU reports into evidence. *See id.* at 25-26.

Attorney Bruch next stated Daughters' positions on the record. *See id.* at 31. Attorney Bruch explained that M.N.F.-O. wished to eventually be

returned to Mother's care when "[Mother] gets herself back together." ***Id.*** On M.N.F.-O.'s behalf, Attorney Bruch requested that the trial court not terminate Mother's parental rights. ***See id.*** at 35.[7] As to M.M.F.-O. and M.J.F., Attorney Bruch indicated that they both desired to remain with Grandmother, and requested termination of Mother's parental rights. ***See id.*** at 31, 35. Given M.A.C.C.'s young age, he was unable to articulate a position, and Attorney Cochran requested termination of Mother's parental rights on his behalf. ***See id.*** at 35.

At the conclusion of the hearing, the trial court entered decrees terminating Mother's parental rights to Children. Mother timely appealed[8] and filed contemporaneous Pa.R.A.P. 1925(a)(2)(i) statements.

_____

[7] We observe it is not the role of an appellate court to second-guess whether a conflict exists concerning a child's legal and best interest. ***See In re Adoption of K.M.G.***, 240 A.3d 1218, 1236 (Pa. 2020) ("[T]he attorney's view of the child's best interests and the child's preferred outcome likely lie … between strongly favoring termination and strongly disfavoring termination. It is not for an appellate court to determine how closely the interest must align or overlap to negate the existence of a conflict.").

[8] The appeals at 1510, 1512, 1514, and 1516 EDA 2024 are taken from the May 15, 2024, orders changing Children's permanency goals from reunification to adoption. The appeals at 1511, 1513, 1515, and 1517 EDA 2024 are taken from the May 15, 2024, decrees terminating Mother's parental rights. Counsel does not address the trial court's orders changing Children's permanency goals to adoption in his brief. Because we conclude that the trial court did not err in terminating Mother's parental rights, any challenges to the trial court's permanency goal changes are moot. ***See Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020) (father's challenge to a child's goal change was moot after this Court affirmed the trial court's termination decrees).

On August 20, 2024, Counsel filed a petition to withdraw and ***Anders*** brief in this Court.[9] We first address Counsel's petition to withdraw. ***See In re S.M.B.***, 856 A.2d at 1237 (stating "this Court may not review the merits of the underlying issues until we address counsel's request to withdraw").

To withdraw pursuant to ***Anders***, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that [] she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Redmond***, 273 A.3d 1247, 1252 (Pa. Super. 2022) (quoting ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*)). As to counsel's duty to inform an appellant of her rights in light of counsel's proposed withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an ***Anders*** brief must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling

---

[9] Mother did not file a response.

- 10 -

case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Here, Counsel states that he conducted a conscientious examination of the record, and concludes that Mother's appeal is "wholly frivolous[.]" ***Anders*** Brief at 20. Counsel avers that he mailed Mother a letter explaining her rights, and has attached a copy of the letter to the petition to withdraw and ***Anders*** brief. ***See id.***, Exhibit A; Petition to Withdraw, 8/20/24, Exhibit A. Counsel's letter complies with the law, as it informs Mother that she may retain new counsel or proceed *pro se* and raise any additional claims she deems worthy of attention. ***See id.***; ***see also Redmond***, 273 A.3d at 1252.

In addition, Counsel's ***Anders*** brief summarizes the facts and procedural history, identifies issues which could arguably support Mother's appeal, and details Counsel's assessment of why the issues are frivolous, with citations to the record and relevant legal authority. As Counsel has complied with ***Anders***, we review the issues presented in the ***Anders*** brief. We also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015); ***see also Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appears … to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

Counsel identifies the following issues:

1. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. §[ ]2511(a)(1), (2), (5) and (8)[?]

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the Children as required by [Section] 2511(b)[?]

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her Children[?]

4. Whether Mother was unable to attend the termination hearing due to no fault of her own[?]

*Anders* Brief at 6 (some capitalization modified).[10]

We review the termination of parental rights for an abuse of discretion.

*See In the Int. of K.T.*, 296 A.3d 1085, 1104 (Pa. 2023). This standard

requires appellate courts to

accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

_____

[10] DHS did not file a brief.

As [the Pennsylvania Supreme Court] discussed in [*In re:*] *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review…. [U]nlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 74 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (citation omitted). "The standard of 'clear and convincing' evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of

- 13 -

the precise facts in issue." ***In re Adoption of C.L.G.***, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citation omitted). Finally, this Court need only agree with the trial court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." ***Int. of M.E.***, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

Instantly, we examine Mother's challenge pursuant to Section 2511(a)(1), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

To satisfy Section 2511(a)(1), the petitioner "must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***See In re Adoption of B.G.S.***, 245 A.3d 700, 706-07 (Pa. Super. 2021) (citation omitted); ***see also In re Adoption of Charles E.D.M.***, 708 A.2d 88, 91 (Pa. 1998) ("Section 2511[(a)(1)] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child

*and* refusal or failure to perform parental duties." (citation omitted; emphasis in original)).

> We have explained that in applying Section 2511(a)(1),
>
> > [t]he court should consider the entire background of the case and not simply … mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of h[er] parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re Adoption of A.C.*, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citations and paragraph break omitted). However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates the timeframe is the "most critical period for evaluation" of a parent's conduct. *In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021).

> Regarding the definition of "parental duties," our Supreme Court has explained:
>
> > Our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert [herself] to take and maintain a place of importance in a child's life. Fortitude is required, as **a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities**.

*Id.* (citations, some quotation marks, and brackets omitted; emphasis added).

- 15 -

Instantly,

> Mother alleges that the termination of [her] parental rights to [Children] was not the disposition best suited to the safety, protection and physical, mental and moral welfare of [Children]. [Mother] claims to have fulfilled all of her [court-ordered] objectives. She also claims to have a strong bond [with Children].

*Anders* Brief at 21.

Contrary to Mother's position, the trial court determined Mother's conduct during Daughters' placement with DHS evidenced her refusal to perform her parental duties:

> [T]his [c]ourt found clear and convincing evidence that [Mother] demonstrated a settled purpose of relinquishing [her] parental claim to [Daughters] and failed to perform parental duties for at least six months immediately preceding the filing of the termination petition …. Prior to filing the termination petition, [Daughters had] been in foster care or DHS care since 2020. Testimony from [Ms. Brown established] that the reason [Daughters] were initially adjudicated dependent and placed in foster care, [M]other's drug abuse, is still an ongoing issue. Specifically, [M]other continues to abuse PCP and has not presented any evidence that she is in a drug treatment program or has completed a drug treatment program. Testimony from [Ms. Brown] was that it would not be in the best interests of [Daughters] to be returned to [Mother's] care because of [Mother's] ongoing drug abuse.

Trial Court Opinion, 8/8/24, at 6-7 (unpaginated) (footnotes omitted).

Concerning M.A.C.C., the trial court opined:

> [I]t is the failure or refusal of [Mother] to perform parental duties which justifies terminating her parental rights. This case initially [arose] because [Mother] was using inappropriately harsh discipline with [Daughters,] and [because Mother] is addicted and abusing alcohol and illegal drugs. [Mother] was given SCPs to demonstrate that she is able to raise [M.A.C.C.] properly. Testimony from [Ms. Brown] showed that, in the time following [M.A.C.C.'s] birth, [Mother] had not completed any of her SCPs,

including drug and/or alcohol counseling. Nor had [Mother] completed the court-ordered mental health [treatment] program. Furthermore, [M.A.C.C.] has been in the care of [Cousin] since [M.A.C.C.'s] birth in 2022[,] and testimony from [Ms. Brown was] that [M.A.C.C.] is well[ ]bonded to [Cousin].

Trial Court Opinion, 7/30/24, at 7-8 (footnotes omitted).

The trial court's findings are supported by the record, and free of legal error. Our review discloses that, since early 2021, Mother has not progressed beyond supervised visitation with Children, and Mother had not visited Children in the nine months prior to the TPR hearing. *See* N.T., 5/15/24, at 16-17. Further, Mother wholly failed to comply with her court-ordered drug and alcohol and mental health goals. *See id.* at 18. Thus, we discern no error in the trial court's determination that DHS proved by clear and convincing evidence that termination of Mother's parental rights was warranted under Section 2511(a)(1), where Mother failed to perform parental duties for at least six months prior to DHS's filing of the TPR petitions. *See S.P.*, 47 A.3d at 827 ("an appellate court must … defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion."). Mother's challenge to termination of her parental rights to Children, under Section 2511(a), is without merit.[11]

_____

[11] Because we agree with the trial court that DHS met its burden with respect to Section 2511(a)(1), we need not address Mother's arguments concerning Section 2511(a)(2), (5), and (8). *See Int. of M.E.*, 283 A.3d at 830.

We consider Mother's second and third issues together. Mother challenges termination under 23 Pa.C.S.A. § 2511(b). ***Anders*** Brief at 27. Mother argues the trial court erred because "a bond exists between [Mother] and [C]hildren." ***Id.*** Mother further argues that she "demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [C]hildren." ***Id.*** at 6.

When the trial court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. ….

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." ***K.T.***, 296 A.3d at 1105. Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** (citation omitted). However, "the parental bond is but one part of the overall subsection (b) analysis." ***Id.*** at 1113.

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and

- 18 -

whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

***Id.*** (footnote and citations omitted).

Instantly, as to Daughters, the trial court found credible Ms. Brown's testimony that termination of Mother's parental rights was in Daughters' best interest due to Mother's ongoing drug abuse. ***See*** Trial Court Opinion, 8/8/24, at 7 (unpaginated). In its opinion concerning M.A.C.C., the trial court elaborated on why it concluded termination of Mother's parental rights was in M.A.C.C.'s best interest:

> [T]estimony from [Ms. Brown established] that [M.A.C.C.] and [Mother] do not have a bonded relationship. [M.A.C.C.] has been in the custody of [Cousin] since his birth in 2022…. [Cousin] provides [M.A.C.C.] with love, comfort, stability, and security at her home and she and [M.A.C.C.] have bonded. Further unrebutted testimony from [Ms. Brown] was that there would be no irreparable harm done to [M.A.C.C.] or [Daughters] if [Mother's] parental rights were terminated.

Trial Court Opinion, 7/30/24, at 11 (footnotes omitted).

The trial court's reasoning is supported by the record and free of legal error. At the TPR hearing, Ms. Brown testified that Children are bonded with their respective caregivers. ***See*** N.T., 5/15/24, at 21, 23. Ms. Brown further testified that Daughters' primary bond was with Grandmother. ***See id.*** at 21-24. The trial court acted within its discretion when it credited Ms. Brown's testimony. ***See S.P.***, 74 A.3d 817, 826-27; ***see also L.C.J.W.***, 311 A.3d at 48 ("It is the province of the [trial] court to assess credibility and resolve any conflicts in the evidence, and in doing so it is free to believe all, part, or none

of the evidence presented." (citation and quotation marks omitted)). Accordingly, Mother's second and third issues entitle her to no relief.

Finally, Mother contends she was absent from the TPR hearing through "no fault of her own."[12] **Anders** Brief at 6.

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defendant oneself in an impartial tribunal having jurisdiction over the matter." **In re Adoption of K.M.D.**, 261 A.3d 1055, 1059 (Pa. Super. 2021). The Adoption Act governs the notice requirement in a termination proceeding:

**§ 2513. Hearing**

* * *

**(b) Notice.--**At least ten days' notice shall be given to the parent … whose rights are to be terminated, by personal service or by registered mail to … [her] last known address or by such other means as the court may require. …

23 Pa.C.S.A. § 2513(b).

Instantly, Mother does not dispute that she received adequate notice; rather, she maintains that she was unable to attend the TPR hearing through "no fault of her own." **Anders** Brief at 6; **see also** N.T., 5/15/24, at 10-11 (the trial court accepting DHS counsel's representation that Mother received notice in person at the previously scheduled TPR hearing). Notwithstanding

_____

[12] Mother does not identify any allegation of trial court error. At best, Mother appears to challenge a lack of due process.

- 20 -

Mother's absence, we observe that she had the benefit of Counsel at the TPR hearing, who adequately represented her interests. Thus, Mother was afforded due process, and her final claim merits no relief.

Finally, our independent examination of the record indicates that there are no other non-frivolous claims that Mother can raise. *See Flowers*, 113 A.3d at 1250. We agree with Counsel's assessment that Mother's appeal is frivolous, and grant Counsel permission to withdraw from his representation of Mother.

Application to withdraw granted. Decrees and orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2024